**Affirmed in Part and Dismissed in Part and Opinion filed November 4, 2014.**



In The

## Fourteenth Court of Appeals

---

### NO. 14-13-00078-CV

---

## IN THE ESTATE OF CECELIA MARGARET GIBBONS, DECEASED

---

**On Appeal from Probate Court Number 1
Harris County, Texas
Trial Court Cause No. 401,492**

---

## O P I N I O N

This appeal arises from a core probate matter involving a contest as to which of three wills executed by the testatrix should be admitted to probate. The attorney who drafted the first two wills in dispute filed an application to probate the second will and later amended that application to seek probate of the first will. The testatrix's husband filed an application to probate the third will, and also sought declaratory relief. Two beneficiaries under the first two wills in dispute, as well as

the attorney who drafted the first two wills, opposed admission of the third will to probate. After a jury trial, the trial court admitted the third will to probate, granted the testatrix's husband letters testamentary, and signed a final order granting declaratory relief requested by the testatrix's husband and awarding attorney's fees to the testatrix's husband under the Declaratory Judgments Act. Before signing the final order, the trial court signed two orders finding counsel for the parties contesting the third will to be in contempt of court for disobeying a prior court order. On appeal, the three parties who contested the admission of the third will to probate assert various challenges to the trial court's contempt orders and its final order. We dismiss the appeal to the extent the appellants attempt to challenge the contempt orders, and, except to this extent, we affirm the trial court's final order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Dr. Cecelia Gibbons (hereinafter "Cecelia"),[1] was diagnosed with brain cancer.[2] On the day of her diagnosis, May 13, 2010, Cecelia contacted her friend, appellant Christine S. Willie (hereinafter "Christine"),[3] an estate planning attorney, and talked to her about estate planning. Christine prepared a will, and the next day Cecelia executed it (hereinafter the "May Will"). Six days later, Cecelia had surgery to remove a brain tumor.

Two weeks later, on June 3, 2010, Cecelia executed another will that had

---

[1] In this opinion, we refer to Dr. Cecelia Gibbons by her first name because other people involved in this case have the same last name.

[2] The facts recited in the first three paragraphs of this section are based on trial evidence and have not been challenged in this appeal.

[3] In this opinion, we refer to Christine Willie by her first name because her husband Joseph Willie, II is also involved in this case.

been prepared by Christine (hereinafter the "June Will"). Shortly thereafter, Christine sent Cecelia an email explaining the gifts under the June Will and the beneficiary designations on Cecelia's life-insurance policies. This email showed that Christine had been designated as one of the beneficiaries under two life-insurance policies. Christine's husband, appellee John Richard Shanks, testified that Cecelia was shocked and surprised to see that Christine was a beneficiary under these two life-insurance policies.

Cecelia and Shanks went to Christine's office on June 21, 2010, to pick up Cecelia's file. Christine testified that she did not see Cecelia again after that day. Within a few days, Cecelia met with attorney Carbett J. Duhon, III. Two months later, on August 26, 2010, Cecelia executed a third will that had been prepared by Duhon (hereinafter the "August Will").

Cecelia passed away on December 9, 2010. Within the week, Christine filed an application to probate the June Will, in which Cecelia named Christine as the independent executrix of her estate. Two weeks later, Shanks filed an application in the same case to probate the August Will, in which Cecelia named Shanks as the independent executor of her estate. Six months later, Christine amended her application so that she sought to probate the May Will rather than the June Will. Christine alleged that Cecelia lacked testamentary capacity after May 20, 2010, and therefore lacked testamentary capacity when she executed the June Will and the August Will.

Shanks timely amended his application adding a number of new parties on whom citation would be served but from whom Shanks did not seek any affirmative relief. Among these parties was (1) appellant Raven A. Pitre, Cecelia's daughter, (2) appellant Gwen Stribling Henderson, a beneficiary under the May

3

Will and the June Will but not under the August Will, (3) appellee Glenn Gibbons, Cecelia's brother, and (4) appellee Annabella Gibbons, Cecelia's mother. Glenn filed an answer and appeared in the case individiually and as attorney-in-fact for Cecelia's mother Annabella. Shanks asked that the trial court admit the August Will to probate, grant him letters testamentary, and appoint him independent executor of Cecelia's estate. Shanks also sought declaratory relief under the Texas Declaratory Judgments Act and sought recovery of reasonable and necessary attorney's fees under that statute. Pitre and Henderson each filed oppositions to the probate of the August Will, alleging lack of testamentary capacity and undue influence by Shanks.

The case proceeded to trial. During trial, Henderson, Pitre, and Christine nonsuited "their entire cause of action against all other [a]pplicants." The trial court granted Shanks a directed verdict as to the validity of the August Will and on the issue of Cecelia's capacity to execute the August Will. In answering the questions submitted in the jury charge, the jury found that Christine and Pitre did not have probable cause to contest the August Will. The jury also found the amount of a reasonable fee for the necessary services of Shanks's attorneys.

The trial court signed an order admitting the August Will to probate, denying probate as to the May Will and the June Will, and granting letters testamentary to Shanks as independent executor upon taking of the required oath. The trial court signed a final order in which it granted declaratory relief requested by Shanks. The trial court declared that, under the no-contest clause of the August Will and in light of the jury's findings that Christine and Pitre did not have probable cause to contest the August Will, the bequests to Christine and Pitre in the August Will were revoked and would pass as if the Christine and Pitre had predeceased Cecelia.

4

The trial court also made declarations relating to the beneficiary designations under two of Cecelia's life-insurance policies. The trial court ordered Christine and Pitre to pay Shanks his reasonable and necessary attorney's fees and expenses under Section 37.009 of the Texas Civil Practice and Remedies Code.

Before signing the final order, the trial court signed two separate orders in which the court granted a motion for contempt filed by Shanks and found that attorney Joseph Willie, II (hereinafter "Joseph"), attorney for Henderson, Pitre, and Christine, was in contempt of court for disobeying a prior court order.

## II.    ISSUES AND ANALYSIS

On appeal, Henderson, Pitre, and Christine (hereinafter collectively the "Contestants") present seven issues challenging the trial court's final order and two issues challenging the trial court's two contempt orders.[4]  We address the seven issues challenging the final order and the arguments under them seriatim.  We then address the challenges to the contempt orders.

### A. Did the trial court have subject-matter jurisdiction to grant declaratory relief regarding the life-insurance policies?

Under their first issue the Contestants assert that the trial court lacked subject-matter jurisdiction to grant declaratory relief regarding the life-insurance policies because there was no live controversy regarding who was entitled to the life-insurance proceeds.  The Supreme Court of Texas has held that a request for declaratory judgment is moot if the claim presents no live controversy.  *See Tex.*

---

[4] Christine, Pitre, and Henderson filed suit against Shanks and Duhon in an ancillary matter under a separate cause number asserting tort claims.  An appeal from the trial court's judgment in that cause number is the subject of an appeal in this court in Cause number 14-12-01026-CV.

*A&M Univ.-Kingsville v. Yarbrough*, 347 S.W.3d 289, 290 (Tex. 2011). A declaratory judgment is appropriate only if a justiciable controversy exists that will be resolved by the declaration sought. *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995). For a justiciable controversy to exist, there must be a real and substantial controversy involving a genuine conflict of tangible interests and not merely a theoretical dispute. *See id.*

In the final order, the trial court declared that (1) at all times up to and including August 26, 2010, Cecelia possessed the requisite capacity to change or update her beneficiary designations on two of her life-insurance policies; (2) Shanks did not unduly influence Cecelia to change or update the beneficiary designations on these policies; (3) Christine is not a beneficiary under either of these two policies; and (4) before her death, Cecelia validly changed the beneficiary designations on these life-insurance policies to name her estate as the sole beneficiary under these policies.

The evidence at trial showed that on January 17, 2011, Joseph sent a letter to the insurer on one of Cecelia's life-insurance policies stating that he had been retained by Christine. Joseph also notified the insurer that Christine was challenging the validity of any beneficiary changes purportedly made after June 15, 2010, to Cecelia's life insurance policy with that insurer on the basis that Cecelia lacked the capacity to contract and that she was subject to duress, coercion, and undue influence. The evidence at trial also showed that, on the same day, Christine filed a claim on this life-insurance policy.

Christine later testified at her deposition and at trial that she was no longer pursuing any claim to any proceeds under Cecelia's life-insurance policies. Even though Christine stopped pursuing any such claim, she sent a letter to one of the

6

insurers challenging the validity of the beneficiary changes that Cecelia made after June 15, 2010, and asserting that Cecelia lacked the capacity to contract and she was subject to duress, coercion, and undue influence. Counsel for Shanks stated during a bench conference that he tried to obtain a stipulation from Christine that the beneficiary changes that Cecelia made to her life-insurance policies were valid, but that Christine would not enter into this stipulation. According to counsel for Shanks, he could not "get a straight answer" in this regard from Joseph, who said that Christine is no longer seeking to obtain insurance benefits but there was no agreement as to whether Cecelia had capacity to make the beneficiary changes.

The Contestants assert that there are no live pleadings by Christine regarding her entitlement to any insurance proceeds. But, the Contestants' nonsuit of any claims asserted by them does not prejudice Shanks's right to pursue his pending claims for declaratory relief. *See* Tex. R. Civ. P. 162 (stating that "[a]ny dismissal pursuant to this rule shall not prejudice the right of an adverse party to be heard on a pending claim for affirmative relief"); *City of Dallas v. Albert*, 354 S.W.3d 368, 375 (Tex. 2011). The Contestants claim that Shanks judicially admitted that Christine was not pursuing any insurance proceeds and had relinquished any claims to such proceeds. Presuming for the sake of argument that Shanks made these admissions, Christine's failure to pursue recovery of any of the life-insurance proceeds does not necessarily mean that there was no live controversy regarding the trial court's declarations regarding the changes made by Cecelia to her life-insurance beneficiary designations. The trial court did not declare that Christine was not pursuing life-insurance proceeds or that she was not entitled to recover these proceeds. Though the trial court declared that Christine is not a beneficiary under either of the two life-insurance policies in question, the focus of these

declarations was on the validity of the Cecelia's changes to the beneficiary designations to these policies. The record reflects that Christine would not stipulate that she was not contesting the validity of these changes. Christine previously had challenged the validity of these changes in a letter to one of the insurers, and there was no evidence that Christine had notified this insurer that she now agreed that these changes were valid.

As to the declaratory relief the trial court granted regarding the life-insurance policies, we conclude that Shanks's claims presented justiciable controversies and that the trial court had subject-matter jurisdiction to grant this relief. *See Bonham State Bank*, 907 S.W.2d at 467–69; *Rodarte v. Investeco Group, L.L.C.*, 299 S.W.3d 400, 408–09 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *WesternGeco, L.L.C. v. Input/Output, Inc.*, 246 S.W.3d 776, 781–82 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

**B. Did the testatrix's husband seek declaratory relief regarding the will's no-contest clause solely for the purpose of obtaining attorney's fees?**

Under their first issue, the Contestants also assert that Shanks's claims seeking declaratory relief regarding the August Will's no-contest clause were duplicative of the issues involved in a proceeding to adjudicate applications to probate two different wills, and were brought solely for the purpose of obtaining attorney's fees. Prior to the nonsuit during trial, Christine had a pending application for probate of either the June Will or the May Will and for issuance to Christine of letters testamentary. Shanks applied for probate of the August Will, issuance to Shanks of letters testamentary, payment of his necessary expenses and disbursements, and declaratory relief regarding the life-insurance policies. Shanks's claims seeking declaratory relief regarding the August Will's no-contest

8

clause did not duplicate other claims already pending before the trial court and did not duplicate the issues involved in a proceeding to adjudicate applications to probate two different wills. These declaratory-judgment claims were properly asserted under the Declaratory Judgments Act.[5] *See Badouh v. Hale*, 22 S.W.3d 392, 394, 397 (Tex. 2000) (adjudicating declaratory-judgment claim as to whether will beneficiary violated will's no-contest provision). Shanks sought and obtained declaratory relief regarding the August Will's no-contest clause. The record supports the trial court's implied determination that Shanks did not bring these declaratory-judgment claims solely for the purpose of obtaining attorney's fees. *See Funes v. Villatoro*, 352 S.W.3d 200, 215–17 (Tex. App.—Houston [14th Dist.] 2011, pet. denied).

Having considered and rejected all of the Contestants' arguments under their first issue, we overrule that issue.

## C. Did the trial court err in submitting the issue of bad faith to the jury?

Under their second issue, the Contestants refer to their nonsuit of their

---

[5] The Contestants also state in passing that these claims were improper as a matter of law. To the extent the Contestants assert that granting such relief is not proper under the Declaratory Judgments Act, the plain meaning of this statute refutes this assertion. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a) (West 2014) (stating that "[a] person interested under a . . . will . . . may have determined any question of construction or validity arising under the instrument . . . and obtain a declaration of rights, status, or other legal relations thereunder"); *id*. § 37.005 (West 2014) (stating that "[a] person interested as or through an executor or administrator, including an independent executor or administrator . . . may have a declaration of rights or legal relations in respect to the trust or estate: (1) to ascertain any class of creditors, devisees, legatees, heirs, next of kin, or others . . . (3) to determine any question arising in the administration of the trust or estate, including questions of construction of wills and other writings").

claims during trial, and they note that this nonsuit rendered the merits of their claims moot. The Contestants then assert that because they had no claims for affirmative relief on file after their nonsuit, the issue of their bad faith should not have been submitted to the jury. We presume, without deciding, that the Contestants preserved error on this argument in the trial court and sufficiently briefed it on appeal.

As stated above, the Contestants' nonsuit of any claims asserted by them does not prejudice Shanks's right to pursue his pending claims for declaratory relief. *See* Tex. R. Civ. P. 162; *Albert*, 354 S.W.3d at 375. These claims included Shanks's declaratory-judgment claims regarding the August Will's no-contest clause. Under former Probate Code section 64, applicable to this clause, the no-contest provision in the August Will is unenforceable against a will beneficiary contesting the August Will, such as Christine or Pitre, if the beneficiary had probable cause to contest the will and if the beneficiary brought and maintained the will contest in good faith. *See* Act of May 25, 2009, 81st Leg., R.S., ch. 414, §1, 2009 Tex. Gen. Stat. 995, 995–96 (stating that "[a] provision in a will that would cause a forfeiture of a devise or void a devise or provision in favor of a person for bringing any court action, including contesting a will, is unenforceable if: (1) probable cause exists for bringing the action; and (2) the action was brought and maintained in good faith") (formerly codified at former Probate Code section 64), repealed effective January 1, 2014 by Act of May 26, 2009, 81st Leg., R.S., ch. 680, 2009 Tex. Gen. Laws 1512, 1512–1732. The trial evidence raised genuine fact issues regarding these matters, and the trial court did not err in submitting these issues to the jury. In any event, it should be noted that the jury found that Christine and Pitre did not have probable cause to contest the August Will, and the

10

jury followed the trial court's instruction not to answer the good-faith question if the jury answered the probable-cause question in this manner. Thus, the jury made no finding regarding good faith or bad faith, so any error in submitting the issue of bad faith to the jury would be harmless.[6]

Having considered and rejected all of the Contestants' arguments under their second issue, we overrule that issue.[7]

## D. Did the trial court reversibly err in allowing the testatrix's brother to amend his answer and to answer as attorney-in-fact for the testatrix's mother less than seven days before trial?

In their third issue, the Contestants assert that the trial court reversibly erred in allowing an amendment of pleadings less than seven days before trial. In September 2011, Glenn Gibbons, Cecilia's brother filed an original answer in which he asserted a general denial and did not assert any claims for affirmative relief. In September 2012, less than seven days before trial and without seeking

---

[6] The trial court incorporated the jury's verdict by reference into its Final Order; nonetheless, in two of its declarations, the trial court stated that the jury determined that Christine and Pitre acted in bad faith and without probable cause in contesting the August Will. These declarations are inaccurate to the extent the court states that the jury found that either Christine or Pitre acted in bad faith. Nonetheless, the Contestants have not assigned error as to this inaccuracy on appeal, and under former Probate Code section 64, no finding regarding good faith or bad faith was necessary in light of the jury's finding regarding probable cause. *See* Act of May 25, 2009, 2009 Tex. Gen. Stat. at 995–96.

[7] In the second issue itself, the Contestants state that there was no evidence to support a bad-faith finding by the jury. But, the Contestants have not provided any argument, analysis, or citations to the record or legal authority in support of this assertion. Even construing the Contestants' brief liberally, we cannot conclude that they have adequately briefed any argument in support of this assertion. *See San Saba Energy, L.P. v. Crawford,* 171 S.W.3d 323, 337 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Therefore, we find briefing waiver. *See id.* In any event, the jury made no finding regarding bad faith or good faith.

11

leave of court, Glenn filed an "Amended Answer and Entry of Appearances" (hereinafter the "Amended Answer"). In this filing, Glenn individually, and, as attorney-in-fact for his mother, Annabella Gibbons, asserted a general denial, entered "their appearances in this cause for all purposes," and noted that they had joined in and adopted Shanks's expert designations and responses to requests for disclosure. Though Glenn did not plead any claims for affirmative relief, he did request in his prayer that the court award him, individually, and, as attorney-in-fact for his mother, Annabella Gibbons, all actual damages to which he may be entitled as well as reasonable and necessary attorney's fees and costs for all work to be done in the trial court.

The Contestants objected to the Amended Answer on the grounds that Glenn filed it less than seven days before trial without leave of court and that this amended answer operated as a surprise to the Contestants. The Contestants moved to strike the pleading. We presume for the purposes of our analysis that the trial court overruled these objections and denied the motion to strike and that the Contestants preserved error in the trial court regarding these complaints. In its final order, the trial court did not grant any affirmative relief to Glenn, either individually or as attorney-in-fact for Annabella. In the final order, the trial court stated that the order fully and finally disposed of all claims and all parties with respect to the phase of the proceedings relating to the will contest and Shanks's declaratory-judgment claims and that the order was appealable. The trial court also stated that the court did not intend to adjudicate Glenn's anticipated application for attorney's fees and expenses and that the court retained jurisdiction over the continued administration of Cecelia's estate, which would include any such application and which was a separate and independent phase of the probate

12

proceedings.

We presume, without deciding, that the trial court erred in overruling the Contestants' objections to the Amended Answer and in denying their motion to strike this pleading. After reviewing the record, we conclude that, even under this presumption, this error did not probably cause the rendition of an improper judgment and did not probably prevent the Contestants from properly presenting the case to this court. *See* Tex. R. App. P. 44.1(a); *Greenstein, Logan & Co. v. Burgess Marketing, Inc.*, 744 S.W.2d 170, 184 (Tex. App.—Waco 1987, writ denied). Thus, no harm resulted from any such error. Accordingly, we overrule the Contestants' third issue.

**E. Did the trial court err in denying a motion for new trial based on the trial court's alleged error in admitting evidence at trial?**

In their fourth issue, the Contestants assert that the trial court erred in denying the written motion for mistrial that they filed more than three weeks after the trial had ended. In this motion, the Contestants argue that the trial court erred in admitting into evidence at trial over their objection a Judgment of Fully Probated Suspension rendered in a disciplinary action against Joseph, the Contestants' counsel, who also testified as a witness at trial ("Disciplinary Judgment").[8] In this judgment, the trial court found that Joseph had committed professional misconduct by neglecting a legal matter entrusted to him by two clients, and the trial court ordered that Joseph be actively suspended from the practice of law for six months, probated over one year.

---

[8] Shanks filed a motion to disqualify Joseph from representing the Contestants, but the record reflects that the trial court denied the motion. *See* Tex. R. Prof. Cond. 3.08.

13

The Contestants argued that this erroneous admission of evidence was not harmless and caused the rendition of an improper jury verdict. This court must give effect to the substance, rather than the form or title, of the Contestants' motion. *See State Bar of Tex. v. Heard*, 603 S.W.2d 829, 833 (Tex. 1980). We conclude that the substance of the Contestants' motion is a motion for new trial based upon the trial court's allegedly erroneous admission into evidence of the Disciplinary Judgment.[9]

While on the witness stand at trial, Joseph was asked whether his law license had ever been suspended, and without objection, he answered, "I have a current appeal going right now. I don't have a final judgment." He then testified regarding the subject matter of the disciplinary action in which the Disciplinary Judgment was rendered. Joseph also testified without objection that he had "won" all of the complaints filed against him by the Commission for Lawyer Discipline. Joseph then agreed that he had not "won" all of them because one of these matters was on appeal. Joseph testified without objection that the Disciplinary Judgment stated that the court found that the appropriate sanction was six months' active suspension to be probated over one year. Joseph testified that the sentence had not been imposed or acted upon. When Shanks offered the Disciplinary Judgment into evidence, Joseph objected that the judgment was still on appeal and therefore not final and operative and that the judgment was irrelevant. The trial court overruled Joseph's objections and admitted the exhibit into evidence, with "the understanding of Mr. Willie's explanation, that he has appealed that decision and

---

[9] If the substance of the motion were a motion for mistrial, it would have been untimely, and the trial court would not have erred in denying it. *See Brazos River Auth. v. Berry*, 457 S.W.2d 79, 80–81 (Tex. Civ. App.—Tyler 1970, writ ref'd n.r.e.); *State v. Berry*, 385 S.W.2d 711, 714 (Tex. Civ. App.—San Antonio 1964, writ ref'd n.r.e.).

14

that he is not currently under the dictates of what that Court ruled until such time as the appeal is carried forward and made final."

We presume, without deciding, that the trial court erred in admitting the Disciplinary Judgment into evidence. After reviewing the record, we conclude that, even under this presumption, any such error did not probably cause the rendition of an improper judgment and did not probably prevent the Contestants from properly presenting their case to this court. *See* Tex. R. App. P. 44.1(a); *Wilson v. John Frantz Co.*, 723 S.W.2d 189, 194 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). Thus, no harm resulted from any such error, and the trial court did not abuse its discretion in denying the Contestants' motion for new trial regarding this alleged error. Accordingly, we overrule the Contestants' fourth issue.

**F. Did the judge appointed to hear the motion to recuse the presiding judge of the trial court not allow the movant to present certain evidence at the hearing on their motion?**

In their fifth issue, the Contestants assert that Judge Olen Underwood, who was appointed to hear Christine's motion to recuse the presiding judge of the trial court, did not allow excerpts from a reporter's record and deposition excerpts to be admitted into evidence at the hearing on the motion to recuse.

The reporter's record from the hearing on Christine's motion to recuse reflects that, after Joseph made his opening statement, Judge Underwood obtained Joseph's agreement that his opening statement told the court what the evidence would show and demonstrated the evidence that Joseph would put before the court. Judge Underwood then stated that, even if he accepted as true all of the evidence that Joseph described in his opening statement, that evidence would not provide

15

any basis for granting Christine's motion to recuse. Judge Underwood announced at the end of the hearing that the motion to recuse was denied. At no time during the hearing did Christine attempt to offer evidence, ask for permission to offer evidence, or object to the trial court's alleged refusal to receive evidence. We conclude that, during the recusal hearing, no complaint was made about any alleged failure by Judge Underwood to allow excerpts from a reporter's record and deposition excerpts to be admitted into evidence, and thus error was not preserved as to the fifth issue.[10] *See* Tex. R. App. P. 33.1(a); *Neely v. Comm'n for Lawyer Discipline*, 302 S.W.3d 331, 350 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). Accordingly, we overrule the fifth issue.

## G. Did the trial court reversibly err when it realigned the parties?

In their seventh issue, the Contestants assert that the trial court erred when it realigned the parties and ruled that Shanks should appear as the plaintiff in the trial of the case, with the right to open and close argument. Shanks filed a "Motion to Align the Parties for Trial," seeking to appear at trial as plaintiff with the right to open and close. Christine opposed his motion and moved the trial court to order that she appear at trial as plaintiff, with the right to open and close. The trial court granted Shanks's motion and impliedly denied Christine's motion.

---

[10] The Contestants also state in a conclusory manner that Judge Underwood erred in denying the motion to recuse and that there was no written order denying this motion. But, the Contestants have not provided any argument, analysis, or citations to the record or legal authority in support of either of these assertions. Even construing the Contestants' brief liberally, we cannot conclude that they have adequately briefed any argument in support of these assertions. *See San Saba Energy, L.P.,* 171 S.W.3d at 337. Therefore, we find briefing waiver. *See id.*

We presume, without deciding, that under Texas Rule of Civil Procedure 266, Christine should have been considered the "plaintiff," that the burden of proof for the whole case did not rest on Shanks, and that the trial court abused its discretion by realigning the parties and ruling that Shanks should appear as the plaintiff in the trial of the case, with the right to open and close argument. *See* Tex. R. Civ. P. 266; *Seigler v. Seigler*, 391 S.W.2d 403, 404 (Tex. 1965). After reviewing the record, we conclude that, even under this presumption, any such error did not probably cause the rendition of an improper judgment and did not probably prevent the Contestants from properly presenting the case to this court. *See* Tex. R. App. P. 44.1(a); *Seigler*, 391 S.W.2d at 404; *Reynolds v. Park*, 485 S.W.2d 807, 817 (Tex. Civ. App.—Amarillo 1972, writ ref'd n.r.e.). Thus, no harm resulted from any such error. Accordingly, we overrule the Contestants' seventh issue.

## H. Did the trial court reversibly err by failing to appoint an attorney-ad-litem for the testatrix's mother?

In their eighth issue, the Contestants assert that the trial court reversibly erred by failing to appoint an attorney-ad-litem for Annabella, Cecelia's mother. In September 2012, Glenn filed the Amended Answer, in which he, individually, and, as attorney-in-fact for Annabella, asserted a general denial, entered appearances, and noted that they had joined in and adopted Shanks's expert designations and responses to requests for disclosure. Though Glenn did not plead any claims for affirmative relief, he did request in his prayer that the court award him, individually, and, as attorney-in-fact for his mother, Annabella Gibbons, all actual damages to which he may be entitled as well as reasonable and necessary attorney's fees and costs for all work to be done in the trial court. The Contestants asserted that there was a conflict of interests between attorney-in-fact Glenn and

Annabella, his principal, and that the trial court should appoint an attorney-ad-litem to protect Annabella's interests.

We presume for the purposes of our analysis that the Contestants preserved error in the trial court as to their eighth issue. In its final order, the trial court did not grant any affirmative relief to Glenn, either individually or as attorney-in-fact for Annabella. In the final order, the court stated that the order fully and finally disposed of all claims and all parties with respect to the phase of the proceedings relating to the will contest and Shanks's declaratory-judgment claims and that the order was appealable. The trial court also stated that the court did not intend to adjudicate Glenn's anticipated application for attorney's fees and expenses and that the court retained jurisdiction over the continued administration of Cecelia's estate, which would include any such application and which was a separate and independent phase of the probate proceedings. We presume, without deciding, that the trial court erred by failing to appoint an attorney-ad-litem for Annabella. After reviewing the record, we conclude that, even under this presumption, this error did not probably cause the rendition of an improper judgment and did not probably prevent the Contestants from properly presenting the case to this court. *See* Tex. R. App. P. 44.1(a); *Greenstein, Logan & Co.*, 744 S.W.2d at 184. Thus, no harm resulted from any such error. Accordingly, we overrule the Contestants' eighth issue.

## I. Does this court have appellate jurisdiction over the trial court's two contempt orders?

In their sixth and ninth issues, the Contestants challenge two contempt orders in which the trial court granted a motion for contempt filed by Shanks, finding that Joseph was in contempt of court for disobeying a prior court order.

18

The Contestants have not cited any cases holding that a court of appeals has appellate jurisdiction to review a contempt order. One might think that interlocutory contempt orders in a case would be merged into the final judgment and be reviewable on appeal from that final judgment. *See Webb v. Jorns*, 488 S.W.2d 407, 408–09 (Tex. 1972). That is not the case, however, because the Supreme Court of Texas has held that, to the extent that a trial court uses its contempt power, appellate courts lack appellate jurisdiction to review the trial court's action, though they may review the action in an original proceeding. *See Rosser v. Squier*, 902 S.W.2d 962, 962 (Tex. 1995); *Ex parte Williams*, 690 S.W.2d 243, 243, n.1 (Tex. 1985); *Ex parte Cardwell*, 416 S.W.2d 382, 384 (Tex. 1967); *Deramus v. Thornton*, 333 S.W.2d 824, 827 (Tex. 1960). Under this rule, we have no appellate jurisdiction to review the trial court's two contempt orders, even on appeal from the trial court's final order. *See Rosser*, 902 S.W.2d at 962; *Ex parte Williams*, 690 S.W.2d at 243, n.1; *Gedney v. Gedney*, No. 09-10-00521-CV, 2012 WL 1448336, at *1 (Tex. App.—Beaumont Apr. 26, 2012, no pet.) (mem. op.); *Hooper v. Hooper*, No. 14-09-01024-CV, 2011 WL 334198, at *1 (Tex. App.—Houston [14th Dist.] Feb. 3, 2011, no pet.) (mem. op.); *Metzger v. Bradt*, 892 S.W.2d 20, 54–56 (Tex. App.—Houston [1st Dist.] 1994, writ denied).

Some jurists have criticized this rule. *See Ex parte Tucci*, 859 S.W.2d 1, 66 n.7 (Tex. 1993) (Hecht, J., dissenting, joined by Enoch, J.) (stating that "[t]he rule that no appeal will lie from a judgment of contempt is dubious at best, but firmly entrenched and seldom challenged"). Nonetheless, we are bound to apply it under the doctrine of stare decisis. *See Rosser*, 902 S.W.2d at 962; *Ex parte Williams*, 690 S.W.2d at 243, n.1; *Gedney*, 2012 WL 1448336, at *1; *Hooper*, 2011 WL 334198, at *1. Accordingly, we lack appellate jurisdiction over the Contestants'

sixth and ninth issues, and we dismiss this appeal to the extent that the Contestants attempt to appeal from the two contempt orders.

## III. CONCLUSION

Shanks's claims for declaratory relief regarding the life-insurance policies presented justiciable controversies, and the trial court had subject-matter jurisdiction to grant relief on these claims. The record supports the trial court's implied determination that Shanks did not bring these declaratory-judgment claims solely for the purpose of obtaining attorney's fees. The trial court did not err in submitting to the jury the question regarding the good faith of Christine and Pitre. In any event, the jury did not answer this question, and any error in submitting the issue of bad faith to the jury would be harmless. Presuming the existence of error as to the Contestants' third, seventh, and eighth issues, the errors would be harmless. The trial court did not abuse its discretion in denying the Contestants' motion for new trial regarding the admission of an exhibit into evidence. Error was not preserved in the trial court as to the fifth issue. And, this court lacks appellate jurisdiction to adjudicate the sixth and ninth issues.

This appeal is dismissed to the extent that the Contestants attempt to challenge the two contempt orders. Except to this extent, we affirm the trial court's Final Order.


/s/     Kem Thompson Frost
        Chief Justice


Panel consists of Chief Justice Frost and Justices Jamison and Wise.