**QTAT BPO SOLUTIONS, INC., Appellant**

v.

**LEE & MURPHY LAW FIRM, G.P, and Clark Love & Hutson G.P., Appellees**

**NO. 14–16–00148–CV**

Court of Appeals of Texas, Houston (14th Dist.).

Opinion filed March 7, 2017.

---

D. John Neese, Samuel Haren, Andrew K. Meade, Houston, TX, for appellant.

Owen McGovern, Jim Mac Perdue, Jr., Alistair B. Dawson, Constance H. Pfeiffer, Kyle Lawrence, John H. Kim, David A. McDougald, Houston, TX, for appellees.

Panel consists of Chief Justice Frost and Justices Brown and Jewell.

## OPINION

Kem Thompson Frost, Chief Justice

In this appeal we consider the applicability of the Texas Citizens Participation Act to claims for breach of a contract between private parties. A litigation-services entity affiliated with various law firms hired a screening company to vet personal-injury claims related to pharmaceutical-products litigation. Before ending its business relationship with the law firms, the screening company downloaded confidential information from the law firms' computer system and gave that information to its own attorney for purposes of bringing a breach-of-contract suit against some of the law firms. After the screening company filed suit, the defendants counterclaimed for breach of a non-disclosure agreement. The screening company, seeking dismissal of the counterclaims under the Texas Citizens Participation Act, took the position that giving the data to its attorney amounted to protected activity.[1] The trial court denied the screening company's motion to dismiss as to two of the law firms, and the screening company now challenges that ruling in this interlocutory appeal. We conclude that the screening company has not shown that the Act applies to the counterclaims for breach of the non-disclosure agreement. Under binding precedent, this conclusion requires dismissal of the case for lack of appellate jurisdiction.

### I. BACKGROUND

Appellees/counter-plaintiffs Lee & Murphy Law Firm, G.P. and Clark, Love &

---

1. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 27.001–.011 (West 2015).

Hutson, G.P. are law firms (collectively, the "Law Firms") that specialize in representing plaintiffs in high-volume pharmaceutical-product-liability cases. The Law Firms created an entity, Litigation & Records Services, LLC ("L&R Services"), to screen clients who have meritorious claims in these high-volume tort cases. L&R Services, in turn, hired appellant/counter-defendant QTAT BPO Solutions, Inc. to perform the screening.

QTAT and James Lee, on behalf of "Clark Burnett Love & Lee, GP/Lee & Murphy, GP" entered into a confidentiality and non-disclosure agreement. The non-disclosure agreement prohibited QTAT from disclosing various categories of information.[2] QTAT signed a letter agreement, dated July 27, 2012, with L&R Services regarding (1) the "medical retrieval and nurse review projects" conducted by QTAT; (2) QTAT's submission of invoices; and (3) the split of any net profits earned by L&R Services, with QTAT receiving 25% of the net profits.

To perform its work, QTAT accessed and reviewed the Law Firms' clients' medical records stored on the part of a database that L&R Services maintained. QTAT was not permitted to access other parts of the database, which contained additional confidential client information and the Law Firms' proprietary information.

L&R Services terminated the agreement with QTAT. QTAT claimed that it had spent over 60,000 man-hours reviewing 40,-000 medical records for 30,000 clients and that L&R Services had failed to pay QTAT in full for that work. QTAT also asserted that it did not receive a share of L&R Services's profits.

Fourteen months later, QTAT's attorney, John Neese, wrote James Lee, requesting "information regarding a substantial body of work performed by QTAT at the request of [L&R Services]/Lee Murphy Law Firm and a number of outside law firms." Neese attached to his letter a spreadsheet containing a list of 26,768 transvaginal-mesh clients. Neese stated that he had redacted certain identifying information, such as social security numbers, and he asked Lee to provide him with the following information for the listed clients:

- The names of the law firms representing each of the clients on the attached spreadsheet;
- Copies of all contingent fee agreements for those cases;
- The status of each case, whether filed, settled, dropped, etc.;
- Copies of all contracts and agreements with the law firms whose clients are on the spreadsheet. (If there was no written documentation for one or more of the law firms, Neese asked Lee to summarize the particulars of each such deal, including the name, address, and telephone number of the attorney(s) with whom Lee had made the arrangement.);
- Copies of all invoices (or other similar type documents) that have been (or will be) submitted to the law firms representing the clients on the spreadsheet;

**2.** The information protected in the non-disclosure agreement included (1) "all information identified in the Uniform Trade Secrets Act as confidential or a trade secret"; (2) "information related to ongoing, potential or concluded legal proceedings"; (3) "matters in any way pertaining to, identifying, describing, or discussing customers, clients, employees, vendors, or suppliers"; (4) "any information protected or covered by HIPAA"; (5) "information related to marketing, products, and services"; (6) "upcoming litigation strategies"; (7) "trade secret information"; (8) "processes"; (9) "technical data"; (10) "financial data"; and (11) "any other information or knowledge [QTAT] obtained in connection with QTAT's employment or business relationship with Lee."

- An accounting of all payments, advances, or reimbursements made to Lee, Lee's firm, L&R Services, or any related or affiliated person or entity in connection with any work performed on any of the cases;
- An accounting of all costs and expenses L&R Services had incurred in connection with the clients on the spreadsheet; and
- A written confirmation of whether Lee intended to pay QTAT for the work it performed, Lee's understanding of exactly how much QTAT was to be paid or how QTAT's payment was to be calculated, and when Lee expected that QTAT would start receiving such payments.

Several months later, QTAT filed a lawsuit against the Law Firms, L&R Services, James Lee, Jr., James Lee Law Firm, PC, Clayton A. Clark, and Clayton A. Clark, Esq., PC. QTAT claimed that it provided $15 million worth of work, but was paid less than $2 million, and received no share of L&R Services's profits. QTAT asserted claims for fraud, fraudulent inducement, breach of contract, unjust · enrichment, brief of fiduciary duty, money had and received, aiding and abetting, and conspiracy.

Each defendant filed a counterclaim alleging that QTAT breached the nondisclosure agreement by disclosing protected information to Neese. According to the defendants, the spreadsheet attached to Neese's demand letter included confidential claim numbers, patient names, maiden names/aliases, dates of birth, and information considered confidential under the Health Insurance Portability and Accountability Act ("HIPAA").[3] The defendants also sought injunctive relief to prevent any additional disclosures of confidential information.

QTAT filed a motion to dismiss the defendants' counterclaims for breach of the non-disclosure agreement under the Texas Citizens Participation Act, asserting that the defendants' counterclaims violated QTAT's right to free speech and right to petition. QTAT argued that communicating the information contained in the spreadsheet to QTAT's attorney (Neese) was protected because the communication related to claims of alleged unethical behavior of attorneys in the marketplace and pertained to a judicial proceeding. QTAT further argued that the defendants could not establish that QTAT breached the non-disclosure agreement.

The defendants responded that the Texas Citizens Participation Act did not apply to their counterclaims for breach of the non-disclosure agreement. The defendants maintained that they did not bring their claims for breach of the nondisclosure agreement in response to QTAT's exercise of its right to freedom of speech and right to petition, and that these "straight forward" claims exist independently of QTAT's claims that the defendants did not pay all of QTAT's invoices or 25% of the net profits earned by L&R Services.

The defendants further contended that QTAT's lawsuit was not a matter of public concern because the litigation involved a private contract dispute and QTAT's communication did not address the purportedly unethical behavior of the defendants. Likewise, the defendants argued that the HIPAA–protected information of their 27,000+ clients was not a matter of public concern. The defendants also argued that the communication did not pertain to a

---

**3.** HIPAA provides that an individual's protected health information cannot be disclosed by covered entities without the individual's consent unless HIPAA expressly permits disclo- sure. 45 C.F.R. § 164.502. Any disclosure without the authorization of the individual must meet HIPAA's requirements. 45 C.F.R. § 164.512.

judicial proceeding because pre-suit investigations do not come within the scope of a judicial proceeding. And, the defendants argued that they had established a prima facie case of all elements of their claims for breach of the non-disclosure agreement.

During the oral hearing on QTAT's motion to dismiss, the issue turned to whether the defendants had suffered any damages. The trial court recessed the hearing to allow the parties to submit supplemental briefing on damages. QTAT filed a supplement to its motion to dismiss, arguing that the $1 million liquidated-damages provision in the non-disclosure agreement amounted to an unenforceable penalty because the agreement allowed the defendants to pursue actual damages in addition to the liquidated damages. QTAT argued that because the liquidated-damages provision was unenforceable, the defendants were required to show actual damages, which QTAT contended they had failed to do.

After a month-long recess, the trial court resumed the hearing. At that time, QTAT raised the issue of standing, and the defendants sought and received leave to submit a post-hearing letter to address standing. After the hearing, the defendants/counter-plaintiffs amended their counterclaims so that only the Law Firms were asserting counterclaims for breach of the non-disclosure agreement. The other counter-plaintiffs—Clayton A. Clark, Clayton S. Clark, Esq., PC, James Lee, Jr. and James Lee Law Firm, PC—dropped their claims for breach of the nondisclosure agreement.

A few weeks later, the trial court signed an order denying QTAT's motion to dismiss, in part, and granting it, in part. The trial court found that though the other defendants/counter-plaintiffs had nonsuited their claims of breach of the non-disclosure agreement against QTAT, QTAT's claim under the Texas Citizens Participation Act survived. The trial court granted the motion to dismiss as to the claims against the other defendants and dismissed with prejudice these parties' counterclaims for breach of the non-disclosure agreement.[4] The trial court denied the motion to dismiss as to the Law Firms' claims for breach of the non-disclosure agreement.[5]

QTAT filed a notice of interlocutory appeal of the order on its motion to dismiss under section 27.003 of the Texas Citizens Participation Act. Though the trial court granted QTAT's motion in part, on appeal QTAT challenges only the portion of the order denying QTAT's motion to dismiss as to the Law Firms. QTAT presents the following issues on appeal:

(1) whether the Law Firms may sue to enforce the non-disclosure agreement;

(2) whether QTAT could have breached the non-disclosure agreement by providing confidential information to its attorney; and

(3) whether the Law Firms can rely on the liquidated-damages provision to prove the damages element of breach of contract.

At the outset, we must decide the threshold issue of whether the Texas Citizens

---

4. The trial court stated that it would "conduct a hearing to determine court costs, attorneys' fees, [and] other expenses incurred in defending the legal action and sanctions pursuant to section 27.009" and ordered that QTAT may set a hearing on damages against the other defendants.

5. The Law Firms state that the motion to dismiss as it relates to L&R Services was denied by operation of law. See Tex. Civ. Prac. & Rem. Code Ann. § 27.008(a). QTAT did not file a notice of appeal regarding any denial by operation of law nor has QTAT made any argument on appeal regarding L&R Services.

Participation Act applies to the claims for breach of the non-disclosure agreement.

## II. BURDEN OF PROOF AND STANDARD OF REVIEW

■ The party filing a motion to dismiss under section 27.003 of the Act carries the burden to show by a preponderance of the evidence that the action is based on, relates to, or is in response to the party's exercise of the right of free speech, the right to petition, or the right of association. Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b). If the movant satisfies this burden, the trial court must dismiss the lawsuit unless the plaintiff establishes by clear and specific evidence a prima facie case for each essential element of the claim in question. *Id.* § 27.005(c). Even if the plaintiff meets this burden, the court still must dismiss the lawsuit if the movant establishes by a preponderance of the evidence each essential element of a valid defense to the non-movant's claim. *Id.* § 27.005(d). In determining whether to grant or deny a motion to dismiss, the trial court shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based. *Id.* § 27.006(a). We review de novo the trial court's determination of whether the moving party met its burden to show that the legal action is based on the party's exercise of the right of free speech, the right to petition, or the right of association. *Deaver v. Desai*, 483 S.W.3d 668, 672 (Tex. App.–Houston [14th Dist.] 2015, no pet.).

## III. Whether the Texas Citizens Participation Act Applies

QTAT points to the trial court's granting of the motion to dismiss with respect to all the other defendants and argues that, to have done so, the trial court necessarily must have found that the Texas Citizens Participation Act applies to the claims for breach of the non-disclosure agreement.

According to QTAT, the trial court agreed with one or both of QTAT's contentions that (1) QTAT's giving the client data to Neese so that he could investigate and bring this litigation was a communication in, or pertaining to, a judicial proceeding and thus the exercise of the right to petition; or (2) QTAT's complaints to Neese regarding the Law Firms' "fraudulent conduct" was a communication made in connection with a matter of public concern and thus the exercise of the right of free speech. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.001(3), (4). QTAT states that it does not seek to disturb on appeal the trial court's finding that the Act applies to the counterclaims for breach of the non-disclosure agreement.

The Law Firms respond that QTAT wrongly assumes the trial court made the finding that the Act applies to the counterclaims for breach of the nondisclosure agreement and they point to the trial court's order denying QTAT's motion. The order contains no express finding that QTAT met its initial burden to establish that the Law Firms' breach-of-contract claims implicate a protected right under the Texas Citizens Participation Act. Although the trial court granted in part the motion to dismiss, there is no basis for implying a finding by the trial court that the Act applies to the Law Firms' breach-of-contract claims.

According to the Law Firms, a nonsuit does not dispose of a pending claim for affirmative relief like QTAT's motion to dismiss. The Law Firms posit that, because the trial court recognized that it needed to rule as to the other defendants, it granted the motion to dismiss as to those parties as an official means of dismissing the claims against them from the case. The Law Firms contend that the trial court's granting of the motion to dismiss for the purpose of memorializing dismissal

amounts to error. Instead, they claim, the proper ruling would have been to deny the entire motion on the ground that the statute does not apply. QTAT counters that the litigation is ongoing and that the other defendants remain in the case as to QTAT's fraud claim, which is still pending against them.

## A. Right of Freedom of Speech

█ In the text of its opening brief, QTAT contends that its complaints to attorney Neese regarding the Law Firms' alleged fraudulent conduct was a communication made in connection with a matter of public concern. QTAT then states in a footnote that as a matter of law, an attorney's ethics is an issue of public concern, citing case law. These two statements comprise the sum total of QTAT's briefing on its position that providing confidential documents to QTAT's attorney presented a matter of public concern. QTAT does not otherwise address, in its opening brief, how the communication implicated a matter of public concern. *See* Tex. R. App. P. 38.1(h) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). Even construing QTAT's opening brief liberally, we cannot find that QTAT adequately briefed any argument in support of the notion that the Law Firms' counterclaims are based on, related to, or in response to QTAT's exercise of the right of free speech. *See In re Estate of Gibbons*, 451 S.W.3d 115, 123 n.7 (Tex. App.–Houston [14th Dist.] 2014, pet. denied). We conclude QTAT has waived any challenge to the trial court's ruling based on this proposition. *See id.*

## B. Right to Petition

█ QTAT contends that the Law Firms' counterclaims were based on QTAT's exercise of its right to petition because providing the information to Neese so that he could investigate and bring this litigation was "a communication in or pertaining to ... a judicial proceeding." *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.001(4). QTAT points out (in its reply brief) that, because QTAT is a corporation, it cannot represent itself in a district court,[6] and so it must retain an attorney, who, in turn, must conduct a reasonable inquiry before signing a pleading. *See* Tex. Civ. Prac. & Rem. Code Ann. § 10.001 (West 2002); Tex. R. Civ. 13.

The Law Firms respond that Texas Rule of Civil Procedure 13, which governs the effect of signing of pleadings, motions, and other papers, requires only that attorneys make a "reasonable inquiry," which is "the amount of examination that is reasonable under the circumstances of the case." *See Mattly v. Spiegel. Inc.*, 19 S.W.3d 890, 897 (Tex. App.–Houston [14th Dist.] 2000, no pet.). The Law Firms assert that disregarding a non-disclosure agreement by disclosing confidential information is not "reasonable under the circumstances." The Law Firms further posit that the Texas Rules of Civil Procedure afford litigants proper ways of getting information through pre-suit discovery. *See* Tex. R. Civ. P. 202 (allowing pre-suit depositions under certain circumstances). QTAT did not seek to obtain the information through these means.

The Fifth Court of Appeals recently addressed whether pre-suit discovery falls within the term "judicial proceeding". In *Levatino v. Apple Tree Café Touring, Inc.*, 486 S.W.3d 724 (Tex. App.–Dallas 2016, pet. denied), an individual asserted that his pre-suit demand letters were communications "'in or pertaining to ... a judicial proceeding.'" *Id.* at 728 (quoting Tex. Civ.

---

6. *See* Tex. Govt. Code Ann. § 27.031(d) (West Supp. 2016) (allowing corporate entities to appear in justice court even though not represented by an attorney).

Prac. & Rem. Code Ann. § 27.001(4)(A)(i)). The court rejected the appellant's position, and concluded that the ordinary meaning of "judicial proceeding" is a pending judicial proceeding. *Id.* at 728–29 (citing Tex. R. Civ. P. 22; Fed. R. Civ. P. 3);[7] *see also id.* at 729 ("[A] judicial proceeding is 'any proceeding initiated to procure an order or decree, whether in law or equity.'" (quoting *Judicial proceeding*, Black's Law Dictionary (10th ed. 2014))). The court concluded that the phrase "pertaining to" does not expand the ordinary meaning of "judicial proceeding" to include anticipated or potential judicial proceedings. *Id.*

QTAT undertakes to distinguish *Levatino*, pointing out that in *Levatino*, the pre-suit communications were demand letters from a manager to an artist and thus the letters were not a prerequisite to the manager filing suit. QTAT argues that because it is a corporation, it could not file suit legally until it had communicated the facts of its case to its attorney.

■■■■ QTAT further relies on the "absolute privilege" to support its position that a "judicial proceeding" includes pretrial communications. Any written or oral communication made in the due course of a judicial proceeding is absolutely privileged. *Knox v. Taylor*, 992 S.W.2d 40, 51 (Tex. App.–Houston [14th Dist.] 1999, no pet.). Communications made in the due course of a judicial proceeding cannot serve as the basis for an action for defamation, regardless of the negligence or the malice with which they were made. *Id.* at 52 (citing *James v. Brown*, 637 S.W.2d 914, 916 (Tex. 1982)). The privilege extends not only to statements made during litigation, but also to statements made in contemplation of and preliminary to judicial proceedings. *Daystar Residential, Inc. v. Collmer*, 176

S.W.3d 24, 27–28 (Tex. App.–Houston [1st Dist.] 2004, pet. denied). QTAT does not assert that the judicial-communications privilege bars the Law Firms' claim for breach of the non-disclosure agreement; rather, QTAT relies on the privilege to show "a body of Texas law" that protects communications made "in the due course of a judicial proceeding" and extends the protection to pre-suit communications.

The common law judicial-communications privilege plays no role in our interpretation of the text of the Texas Citizens Participation Act. *See Lahijani v. Melifera Partners, LLC*, No. 01-14-01025-CV, 2015 WL 6692197, at *4 (Tex. App.–Houston [1st Dist.] Nov. 3, 2015, no pet.) (mem. op.) ("The [judicial communications] privilege extends not only to statements made during litigation, but also to statements made in contemplation of and preliminary to judicial proceedings. However, the issue of whether the absolute judicial communications privilege bars appellees' claims does not bear on our determination of whether the [Texas Citizens Participation Act] applies in the first instance and, therefore, is not properly within the limited scope of this interlocutory appeal.") (citations omitted). So, we do not consider the reach of the absolute judicial-communications privilege in determining whether the Act applies to the Law Firms' claims for breach of the non-disclosure agreement.

We conclude that QTAT's pre-suit communication with attorney Neese was not made in or pertaining to a judicial proceeding. *See Levatino*, 486 S.W.3d at 728–29.

## C. New Theories Raised for the First Time in the Reply Brief

■■■■ In its reply brief, QTAT asserts, under section 27.001(4)(C) of the Texas

---

7. Texas Rules of Civil Procedure 22, entitled "Commenced by Petition," provides that "[a] civil suit ... shall be commenced by a petition filed in the office of the clerk." Tex. R. Civ. P. 22. Federal Rules of Civil Procedure 3 similarly provides that "[a] civil action is commenced by filing a complaint with the court." Fed. R. Civ. P. 3.

Citizens Participation Act, that its exercise of the right to petition is "a communication that is reasonably likely to encourage consideration or review of an issue by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding." Tex. Civ. Prac. & Rem. Code Ann. § 27.001(4)(C). QTAT did not raise—in the trial court or in its opening brief in this court—the argument that the Neese disclosures implicate the right to petition under section 27.001(4)(C). QTAT, having waived its 27.001(4)(C) argument, cannot now rely on it as a basis for coming within the Act. See Tex. Ear Nose & Throat Consultants, PLLC v. Jones, 470 S.W.3d 67, 84 n.15 (Tex. App.–Houston [14th Dist.] 2015, no pet.) (holding argument was waived because it was not raised in trial court, but raised for the first time in a reply brief on appeal).

 QTAT further contends, in its reply brief, that it can meet its burden to show that its communication pertained to an already-filed legal proceeding. QTAT explains that it provided medical-record reviews for the Law Firms' individual clients, and then brought this suit because, QTAT claims, the Law Firms structured their cost allocation for settled cases in a manner that maximized their own profits while leaving none for QTAT. According to QTAT, because all or some of the settled cases were filed in court at some point, those cases were judicial proceedings as defined by Levatino, and thus fall within that scope of the Act. Therefore, QTAT argues, its communication about those cases pertained to judicial proceedings and so fell under the Act's protection. QTAT did not assert this argument in the trial court and instead waited until its appellate reply brief to raise it. See Tex. Ear Nose & Throat Consultants, PLLC, 470 S.W.3d at 84 n. 15 (holding argument was waived when it was not raised in trial court, but raised for the first time in a reply brief on

appeal). We do not consider the merits of waived arguments. See id.

We conclude that QTAT has not shown that it carried its burden of proving by a preponderance of the evidence that the Law Firms' claims for breach of the nondisclosure agreement are based on, relate to, or are in response to QTAT's exercise of the right of free speech, the right to petition, or the right of association. See Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b).

### D. The Proper Appellate Judgment Under This Court's Precedent

The Texas Legislature has provided that "[a] person may appeal from an interlocutory order of a district court ... that ... denies a motion to dismiss filed under Section 27.03 [of the Civil Practice and Remedies Code]." Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(12). In Jardin v. Marklund, a divided panel of this court concluded that, although the court has jurisdiction to review a trial court's interlocutory denial of a motion to dismiss under the Texas Citizens Participation Act, the court lacks appellate jurisdiction if the court concludes the appellant has not shown that the claims are based on, relate to, or are in response to the appellant's exercise of the right of free speech, the right to petition, or the right of association. See 431 S.W.3d 765, 768, 774 & n.9 (Tex. App.–Houston [14th Dist.] 2014, no pet.); but see Adams v. Starside Custom Builders, LLC, No. 05-15-01162-CV, 2016 WL 3548013, at *3–5 (Tex. App.–Dallas June 28, 2016, pet. filed) (mem. op.) (concluding that under section 51.014(a)(12) court of appeals had jurisdiction to review and affirm interlocutory order denying motion to dismiss, even though court concluded that appellant had not shown that the Texas Citizens Participation Act applied to the claim against him); Sloat v. Rathbun,

No. 03-14-00199-CV, 2015 WL 6830927, at *1, 8, 9 (Tex. App.–Austin Nov. 6, 2015, pet. dism'd) (mem. op.) (same as *Adams*); *I–10 Colony, Inc. v. Lee*, Nos. 01–14–00465–CV & 01–14–00718–CV, 2015 WL 1869467, at *2, 4–5 (Tex. App.–Houston [1st Dist.] April 23, 2015, no pet.) (mem. op.) (same as *Adams*). The courts of appeals have split on this issue. *Compare Jardin*, 431 S.W.3d at 768, 774 & n. 9, *with Adams*, 2016 WL 3548013, at *3–5; *Sloat*, 2015 WL 6830927, at *1, 8, 9; *I–10 Colony, Inc.*, 2015 WL 1869467, at *2, 4–5; *see also* Laura Lee Prather & Justice Jane Bland, *Bullies Beware: Safeguarding Constitutional Rights Through Anti–SLAPP in Texas*, 47 Tex. Tech. L. Rev. 725, 761 (2015).

 The parties have not cited and research has not revealed (1) a decision from the Supreme Court of Texas or this court sitting en banc that is on point and contrary to this holding in *Jardin*, or (2) a material change in the relevant statutes since that case was decided. Therefore, we are bound by this holding in *Jardin*. *See Glassman v. Goodfriend*, 347 S.W.3d 772, 781 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (en banc) (noting that under principles of horizontal stare decisis, a panel of this court is bound by a prior holding of another panel of this court absent a decision from a higher court or this court sitting en banc that is on point and contrary to the prior panel holding or an intervening and material change in the statutory law). Under this precedent, we must dismiss for lack of appellate jurisdiction based on our conclusion that QTAT has not shown it proved that the Texas Citizens Participation Act applies to the Law Firms' counterclaims for breach of the non-disclosure agreement. *See Jardin*, 431 S.W.3d at 768, 774 & n.9.

8. In light of this conclusion, we need not and do not address whether the Law Firms estab-

## IV. CONCLUSION

QTAT has not shown that it carried its burden of proving that the Law Firms' counterclaims for breach of the non-disclosure agreement are based on, relate to, or are in response to QTAT's exercise of the right of free speech, the right to petition, or the right of association. Therefore, QTAT has not shown that the Law Firms' counterclaims implicate the Texas Citizens Participation Act.[8] These conclusions mean that under the *Jardin* precedent, this court lacks appellate jurisdiction. Obedient to this precedent, we dismiss this appeal for lack of jurisdiction.

lished the prima facie elements of their claims for breach of the non-disclosure agreement.