

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-17-00011-CV

_____


DR. GEORGE F. MORICZ, Appellant

V.

PAMELA K. LONG AND STACY A. LONG, INDIVIDUALLY AND AS HUSBAND AND
WIFE, AND NICHOLE HAMILTON, Appellees


On Appeal from the 202nd District Court
Bowie County, Texas
Trial Court No. 16C1186-202



Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

This interlocutory appeal arises out of (A) the former employment of Pamela K. Long in George Moricz's medical practice, (B) Moricz's allegations of fraud, theft, and embezzlement by Long, (C) a resulting lawsuit by Long, her husband, Stacy A. Long, and her friend, Nichole Hamilton, against Moricz for libel per se and invasion of privacy, and (D) the dismissal of some of those resulting actions under the Texas Citizens Participation Act (the Act), our state's so-called anti-SLAPP[1] statute. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001–.011 (West 2015). We dismiss Long's, Stacy's, and Nichole's attempted appeal for want of jurisdiction and reverse and render in part and affirm in part, because (1) we have no jurisdiction over the attempted interlocutory appeal of a dismissal under the Act, (2) the demand letters were Moricz's exercise of his right to petition under the Act, (3) Long established no prima facie case for invasion of privacy, (4) Stacy and Nichole established no prima facie case for libel per se, and (5) Long did establish a prima facie case for libel per se.

To obtain dismissal under the Act, a defendant must show "by a preponderance of the evidence that the legal action is based on, relates to, or is in response to the party's exercise of the right of free speech; the right to petition; or the right of association." TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b). "Exercise of the right of free speech" is defined in the Act as "a communication made in connection with a matter of public concern." TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(3). "Exercise of the right to petition" is defined, in part, as "a communication in or pertaining to . . . a judicial proceeding" and as "any other communication that falls within the

---

[1]SLAPP stands for Strategic Lawsuit Against Public Participation.

2

protection of the right to petition government under the Constitution of the United States or the constitution of this state." TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(4)(A)(i), (E). Finally, "exercise of the right of association" is defined as "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests," with "communication" being separately defined as "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(1), (2).

When a trial court must decide whether to grant a motion to dismiss under the Act, the statute instructs the court to "consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." TEX. CIV. PRAC. & REM. CODE ANN. § 27.006. If the movant meets its burden to show that a claim is covered by the Act, to avoid dismissal of that claim, a plaintiff must establish "by clear and specific evidence a prima facie case for each essential element of the claim in question." TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c). In *In re Lipsky*, 460 S.W.3d 579 (Tex. 2015) (orig. proceeding), the Texas Supreme Court clarified how this evidentiary standard should be applied. It wrote, "[M]ere notice pleading—that is, general allegations that merely recite the elements of a cause of action—will not suffice." *Id*. at 590–91. "Instead, a plaintiff must provide enough detail to show the factual basis for its claim." *Id.* at 591. The Texas Supreme Court noted that, "[i]n contrast to 'clear and specific evidence,' a 'prima facie case' has a traditional legal meaning." *Id.* at 590. "It refers to evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." *Id.* "It is the 'minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true.'"

3

*Id.*; *see Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*, 416 S.W.3d 71, 80 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) ("prima facie case" in the Act "implies a minimal factual burden," the "minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true"). Thus, for example, "[i]n a defamation case that implicates the [Act], pleadings and evidence that establish . . . the facts of when, where, and what was said, the defamatory nature of the statements, and how they damaged the plaintiff should be sufficient to resist a . . . motion to dismiss" under the Act. *Lipsky*, 460 S.W.3d at 591.

If the nonmovant establishes a prima facie case, the burden shifts back to the movant. In order to obtain dismissal, the movant must establish by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(d).

We review de novo a trial court's ruling on a motion to dismiss under the Act. *Better Bus. Bur. of Metro. Houston, Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 353 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). In conducting this review, we review the pleadings and evidence in a light favorable to the nonmovant. *Newspaper Holdings, Inc.*, 416 S.W.3d at 80–81.

We start with a bit more background before getting to our analysis.

Long and Moricz agree on few things. They do not dispute that she once served as an employee of his medical practice and that she does not work there anymore. It is not disputed that, on December 14, 2015, at a meeting in Moricz's office, Moricz, Long, and accountant Mike Munnerlyn discussed allegations that Long had committed fraud, theft, and embezzlement while employed by Moricz. Moricz claims, and Long disputes, that an internal audit of his medical

4

practice revealed that Long, who had a role in the practice's billing process, had stolen thousands of dollars of over-the-counter supplements available through the practice and fraudulently arranged discounted and free medical care from the practice for certain patients. Moricz further alleges, and Long further disputes, that, at that meeting, Long admitted committing the acts and agreed to repay him $8,730.45 in installments. Though Moricz contends that Long's employment was terminated, she alleges that she resigned.

On or about December 29, 2015, Moricz mailed Long two identical letters demanding that, as part of their alleged agreement, she pay him $8,730.45 for "unpaid invoices" by January 30, 2016. On or about January 6, 2016, Long found a letter from Moricz that was "left on the ground by [her] front door" by a process server. The letter stated:

> This notice is being served against Pam Long who on 14 DEC 2015 admitted to fraud committed against George F. Moricz MD, Professional Association. At 2PM on 6 JAN 2016, Pam Long is in default on first installment of repayment of theft committed against the business of George F. Moricz MD, Professional Association. See enclosed copy of FIRST CLASS MAIL and Certified Letter 70111150 00011994 7360 dated 29 DEC 2015. This will serve as FINAL NOTICE and WARNING to commence in 24 hours without delay of legal and criminal proceedings of Pam Long, and other accomplices who conspired to commit fraud against George F. Moricz MD, Professional Association.

On or about the same day, similar letters were hand-delivered to Stacy and Nichole, accusing each of them of conspiring with Long to defraud Moricz and informing the recipient, in pertinent part, that Long had "admitted workplace theft," that she was "in default on the first installment of repayment of theft committed," and that legal and criminal proceedings would be commenced against them within twenty-four hours.[2] Long, Stacy, and Nichole (the plaintiffs)

---

[2]Though portions of the letters' text appear in the pleadings, the three letters are not a part of the record.

5

allege that, on January 7, 2016, Long sent a cashier's check to Moricz in the amount of $744.25 "because she believed she might have owed this amount for medication her husband received through [Moricz's] office," but the check went uncashed.

According to the plaintiffs' pleadings,[3] on January 14, 2016, and April 7, 2016, Moricz filed police reports with the Texarkana Texas Police Department (TTPD) accusing Long of theft and embezzlement totaling $43,391.00. After an investigation, the TTPD determined that the necessary components of a criminal case were not present because this was a dispute over how much was owed to Moricz. The TTPD determined that the case was civil in nature and closed the matter as "unfounded."

The plaintiffs filed suit against Moricz, with all three plaintiffs asserting claims for libel per se as to the demand letters, and Long asserting claims of libel per se regarding the police report and an additional claim for invasion of privacy by intrusion. Moricz entered a general denial and asserted several affirmative defenses. Moricz subsequently moved to dismiss the plaintiffs' claims under the Act. After the plaintiffs filed a response to the motion and a hearing was held, the trial court dismissed Long's claims regarding the police report, but denied the motion as to all claims regarding the demand letters. The trial court awarded Moricz $2,387.50 in attorney fees. Both sides appealed.

On appeal, Moricz contends that the trial court erred in failing to dismiss all claims regarding the demand letters because the demand letters were an exercise of free speech and of his

---

[3]The police report is not part of the record.

right to petition and because the plaintiffs have not established a prima facie case for each element of their claims.[4]

*(1)*      *We Have No Jurisdiction Over the Attempted Interlocutory Appeal of a Dismissal Under the Act*

Long, Stacy, and Nichole filed a notice of cross appeal in this case, and they argue, in part, that the trial court made several errors in its order dismissing a portion of their claims.

We have interlocutory appellate jurisdiction of appeals only from orders that the Legislature has specified are appealable. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014 (West Supp. 2016); *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001). "We strictly construe a statute authorizing an interlocutory appeal because it is an exception to the general rule that only final judgments are appealable." *Rogers v. Orr*, 408 S.W.3d 640, 642 (Tex. App.—Fort Worth 2013, pet. denied); *see also CMH Homes v. Perez*, 340 S.W.3d 444, 447 (Tex. 2011). An interlocutory appeal is allowed from an order denying a motion to dismiss under the Act. TEX. CIV. PRAC. & REM. CODE ANN. § 27.008(a), § 51.014(a)(12); *Lipsky*, 460 S.W.3d at 585 n.2. But no express statutory authority allows an interlocutory appeal from an order granting a motion to dismiss under the Act. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014; *Fleming & Assocs., L.L.P. v. Kirklin*, 479 S.W.3d 458, 460 (Tex. App.—Houston [14th Dist.] 2015, pet. denied); *Schlumberger Ltd. v. Rutherford*, 472 S.W.3d 881, 886 (Tex. App.—Houston [1st Dist.] 2015, no pet.).

---

[4]Moricz also argued that the statements made in the demand letters were subject to an absolute judicial privilege. However, the issue was not preserved for our review because Moricz's motion to dismiss did not raise the issue.

Accordingly, to the extent the plaintiffs raise points of error on cross appeal from the trial court's order, we dismiss their attempted appeal for want of jurisdiction. *See* TEX. R. APP. 42.3(a), 43.2(f); *Kirklin*, 479 S.W.3d at 461; *Schlumberger*, 472 S.W.3d at 895.

*(2)     The Demand Letters Were Moricz's Exercise of His Right to Petition Under the Act*

In his first two points of error, Moricz contends that the trial court erred in failing to find that the Act applied to the plaintiffs' claims regarding the demand letters because they are related to or responsive to his exercise of his right to free speech and his right to petition, respectively.[5] We need only address the right to petition.

Moricz contends that the demand letters were an exercise of his right to petition because they were notice and final warnings before he commenced civil and criminal actions against the plaintiffs. While such pre-suit demand letters are communications under Section 27.001(1), they do not pertain to "a judicial proceeding" so as to be an "[e]xercise of the right to petition" under Section 27.001(4)(A)(i) because there was no pending litigation at the time they were sent. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(1), (4)(A)(i); *Levatino v. Apple Tree Café Touring, Inc.*, 486 S.W.3d 724, 728–29 (Tex. App.—Dallas 2016, pet. denied); *QTAT BPO Solutions v. Lee & Murphy Law Firm*, No. 14-16-00148-CV, 2017 WL 924534, at *5–6 (Tex. App.—Houston [14th Dist.] Mar. 7, 2017, pet. filed).[6] However, a pre-suit demand letter is an "exercise of the

---

[5]Here, it is undisputed that the plaintiffs' claims are "relate[d] to, or [are] in response to" the content and manner of delivery of the demand letters; therefore, in order to determine if the Act applies, we need only examine whether the demand letters amount to an exercise of Moricz's right of association, free speech, or petition. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b).

[6]While *Levatino v. Apple Tree Café Touring, Inc.*, and *QTAT BPO Solutions v. Lee & Murphy Law Firm* hold that a pre-suit demand letter is not a communication pertaining to a judicial proceeding under Section 27.001(4)(A)(i),

right to petition" because it falls within the definition under subsection (E), which is "any other communication that falls within the protection of the right to petition government under the Constitution of the United States or the constitution of this state." TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(4)(E); *Long Canyon Phase II & III Homeowners Ass'n, Inc. v. Cashion*, 517 S.W.3d 212, 220–21 (Tex. App.—Austin 2017, no pet.). As stated by our sister court in Austin:

> Subsection (E) reflects legislative intent that the definition be consistent with and incorporate the nature and scope of the "right to petition" that had been established in constitutional jurisprudence. *See Serafine* [*v. Blunt*], 466 S.W.3d [352,] at 377– 82 (Pemberton, J., concurring). The established understanding under First Amendment jurisprudence, both now and at the time of the [Act's] enactment, was that pre[-]suit demand letters generally fall within the "right to petition," although there is a federal circuit court case holding otherwise in the view that the petition right embraces only communications made to or toward government and not those between private parties. *See Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 208 F.3d 885, 886, 888–93 (10th Cir. 2000) (en banc). While the majority rule indeed appears to be founded on a policy-laden notion of courts providing "breathing space" for the underlying right as opposed to specific support in constitutional text, we must presume that the Legislature intended this view of the protection's scope to control nonetheless.

*Cashion*, 517 S.W.3d 220–21 (footnotes omitted). We agree with the well-reasoned analysis in *Cashion* and find that the demand letters were an exercise of Moricz's right to petition.[7] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(4)(E); *Cashion*, 517 S.W.3d 220–21. Accordingly, we conclude that the Act applies to plaintiffs' claims. Having found that the Act applies, the plaintiffs had the burden to establish through clear and specific evidence each element of their claims for

---

neither case addresses whether a demand letter amounts to an exercise of the right to petition under subsection (E). *See Levatino*, 486 S.W.3d at 728–29; *QTAT BPO Solutions*, 2017 WL 924534, at *5-6.

[7]Having found that the plaintiffs' claims relate to Moricz's exercise of his right to petition under his second point of error, we need not address whether they relate to his exercise of free speech under his first point of error.

9

invasion of privacy and libel. *See* Tᴇx. Cɪᴠ. Pʀᴀᴄ. & Rᴇᴍ. Cᴏᴅᴇ Aɴɴ. § 27.005(c) (nonmovant's burden).

*(3)     Long Established No Prima Facie Case for Invasion of Privacy*

Moricz contends that the trial court erred in denying his motion to dismiss because Long failed to establish a prima facie case for each essential element of her claim for invasion of privacy by intrusion. *See* Tᴇx. Cɪᴠ. Pʀᴀᴄ. & Rᴇᴍ. Cᴏᴅᴇ Aɴɴ. § 27.005(c) (nonmovant's burden). We agree.

Texas recognizes the common-law right to privacy. *Billings v. Atkinson*, 489 S.W.2d 858, 859 (Tex. 1973). "The basis of a cause of action for invasion of privacy is that the defendant has violated the plaintiff's rights to be left alone." *K-Mart Corp. v. Trotti*, 677 S.W.2d 632, 638 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.) (citations omitted). To prove invasion of privacy by intrusion, one must establish three elements: (1) an intentional intrusion, physically, or otherwise, on the solitude, seclusion, or private affairs or concerns of another; (2) that such intrusion would be highly offensive to a reasonable person; and (3) that he suffered injury as a result of the intrusion. *Clayton v. Wisener*, 190 S.W.3d 685, 696 (Tex. App.—Tyler 2005, pets. denied) (citing *Valenzuela v. Aquino*, 853 S.W.2d 512, 513 (Tex. 1993). When evaluating the "highly offensive" element of an intrusion on seclusion claim, courts have required that the intrusion be unreasonable, unjustified, or unwarranted. *Billings*, 489 S.W.2d at 860; *Vaughn v. Drennon*, 202 S.W.3d 308, 320 (Tex. App.—Tyler 2006, no pet.).

It is undisputed that, in late December 2015 or early January 2016, Moricz mailed two letters to Long, demanding that as part of their alleged agreement, she pay him $8,730.45. Shortly

10

thereafter, Moricz's hired process server, Thomason, left on Long's doorstep a demand letter accusing her of fraud and theft and warning her that legal action would be taken against her. Long contends that these actions intruded on her solitude, seclusion, and private affairs.

The pleadings and evidence are insufficient to establish a prima facie case for the elements of intrusion and offensiveness. While Long's doorstep is private property, Thomason did not enter the home, and there is no evidence that Long's doorstep was located in a private area, secluded, fenced, or otherwise unavailable to receive deliveries, visitors, or notifications. *See Gonzales v. Sw. Bell Tel. Co.*, 555 S.W.2d 219, 222 (Tex. App.—Corpus Christi 1977, no writ) (defendant entered plaintiff's home without permission). Under the circumstances of this case, mailing two demand letters and leaving a third on Long's doorstep is not unreasonable and would not be highly offensive to a reasonable person. *See Clayton*, 190 S.W.3d at 696; s*ee also Kramer v. Downey*, 680 S.W.2d 524, 525 (Tex. App.—Dallas 1984, writ ref'd n.r.e.) (intrusion found when defendant followed and spied on plaintiff). Because she failed to establish through clear and specific evidence a prima facie case on invasion of privacy, we find that the trial court erred in denying Moricz's motion to dismiss the claim. Accordingly, we sustain this point of error and reverse the trial court's order as to Long's claim for invasion of privacy.

*(4)    Stacy and Nichole Established No Prima Facie Case for Libel Per Se*

As part of his third point of error, Moricz contends that the trial court erred in denying his motion to dismiss the plaintiffs' claims because the plaintiffs failed to establish a prima facie case for libel per se. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c) (nonmovant's burden).

11

To establish a prima facie case of libel, Long, Stacy, and Nichole must each show that (1) Moricz published a false statement of fact in written or other graphic form[8] to a third party; (2) the statement was defamatory concerning the individual plaintiff; (3) Moricz acted negligently concerning the truth of the statement; and (4) the statement caused damages, unless the statement is defamatory per se, in which case damages may be presumed. *See Lipsky*, 460 S.W.3d at 593.

"Defamatory statements are 'published' if they are communicated orally, in writing, or in print to some third person capable of understanding their defamatory import and in such a way that the third person did so understand." *Austin v. Inet Techs., Inc*., 118 S.W.3d 491, 496 (Tex. App.—Dallas 2003, no pet.) (quoting *Ramos v. Henry C. Beck Co*., 711 S.W.2d 331, 335 (Tex. App.—Dallas 1986, no writ)). A statement that "tends to injure a living person's reputation . . . or to impeach any person's honesty, integrity, virtue, or reputation" is defamatory by statute. TEX. CIV. PRAC. & REM. CODE ANN. § 73.001 (West 2011); *Hancock v. Variyam*, 400 S.W.3d 59, 63 (Tex. 2013). Under the common law, "[a] statement that injures a person in her office, profession, or occupation is typically classified as defamatory per se." *Hancock*, 400 S.W.3d at 64. "A false statement which charges a person with the commission of a crime is libelous per se." *Leyendecker & Assocs. v. Wechter*, 683 S.W.2d 369, 374 (Tex. 1984). We construe an alleged defamatory statement "as a whole in light of the surrounding circumstances based on how a person of ordinary intelligence would perceive it." *New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 154 (Tex. 2004). Negligence is the "failure to investigate the truth or falsity of a statement before publication and

---

[8]TEX. CIV. PRAC. & REM. CODE ANN. § 73.001 (defamation in written or graphic form is libel).

[the] failure to act as a reasonably prudent [person]." *Marathon Oil Co. v. Salazar*, 682 S.W.2d 624, 631 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.).

Stacy and Nichole failed to establish a prima facie case of libel because their separate claims are not supported by clear and specific evidence that Moricz published a false written statement about each of them to a third party. *See Lipsky*, 460 S.W.3d at 593. As per the plaintiffs' pleadings, the demand letters served on Stacy and Nichole both alleged that Long had admitted to "workplace theft." Stacy's letter warned that legal and criminal proceedings would commence against "Pam[ela] Long, Stacy Long and other accomplices," while Nichole's letter warned of the same proceedings against "Pam[ela] Long, Nichole Hamilton and other accomplices." Stacy's letter did not mention any accusation against Nichole, and Nichole's letter did not mention any accusation against Stacy. Even though the letters clearly accused each individual recipient of a crime, there is no specific factual allegation in the pleadings or affidavits that Moricz published, *in writing*, the accusation against Stacy and Nichole to a third person (someone other than the accused recipient, himself, or herself). The process server hand-delivered the letters and even told Nichole that "Moricz said Pam stole a lot. She's in a lot of trouble, and I just hated to see your name involved," but there is no specific factual allegation indicating that he knew of the letters' respective accusations against Stacy and Nichole. Despite viewing the pleadings and affidavits in the light most favorable to the plaintiffs, we find that Stacy and Nichole have failed to establish by clear and specific evidence a prima facie case for libel. *See Newspaper Holdings, Inc.*, 416 S.W.3d at 80–81. Accordingly, we sustain this point of error and reverse the trial court's order refusing to dismiss the libel claims of Stacy and Nichole.

13

*(5)     Long Did Establish a Prima Facie Case for Libel Per Se*

There is, however, clear and specific evidence to establish the elements of Long's claim for libel per se. The demand letters delivered to Stacy and Nichole plainly accuse Long of committing fraud and theft.[9] In her suit, Long denies any wrongdoing, asserts that the accusations in the letters are false, and alleges that Moricz made the false statements "with malice and with full knowledge" that the accusations were false. That is sufficient to establish a prima facie case that Moricz published, in written form, a false statement of fact about Long to third parties (someone other than Long) and that he did so knowing the statement was false.[10] *See Lipsky*, 460 S.W.3d at 593. The statements have a defamatory meaning because they accused Long of committing one or more crimes. *See Wechter*, 683 S.W.2d at 374. Therefore, based on the pleadings and the evidence, we find that Long has provided enough factual detail "to show the factual basis for [her] claim." *See Lipsky*, 460 S.W.3d at 91; *Newspaper Holdings, Inc.*, 416 S.W.3d at 80–81. Accordingly, we overrule this point of error as to Long and affirm the trial court's order denying Moricz's motion to dismiss Long's libel per se claim as to the demand letters.

In summary we (A) dismiss the plaintiffs' cross appeal, if any, for lack of jurisdiction; (B) reverse the trial court's order and render a judgment of dismissal as to Long's claim for invasion of privacy; (C) reverse the trial court's order and render a judgment of dismissal as to the

---

[9]There is no dispute that Stacy and Nichole received the demand letters. *See Putter v. Anderson*, 601 S.W.2d 73, 78 (Tex. Civ. App.—Dallas 1980, writ ref'd n.r.e.). There is clear and specific evidence that Stacy and Nichole understood the letters' content, as Stacy's affidavit references "the accusations against [Long]" and Nichole's affidavit states that she received "a notice stating Pam Long had admitted workplace theft against [Moricz]."

[10]Because the parties are private individuals, Long need only prove that Moricz acted negligently concerning the truth of the statement. *See Lipsky*, 460 S.W.3d at 593; *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex.1998).

14

libel per se claims of Stacy and Nichole; and (D) affirm the trial court's order denying Moricz's motion to dismiss Long's libel per se claim as to the demand letters.

Josh R. Morriss, III
Chief Justice

Date Submitted:     June 7, 2017
Date Decided:       July 20, 2017

15