**REVERSE in part; AFFIRM in part; Remand and Opinion Filed March 23, 2023**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-21-00798-CV**

**LACORE ENTERPRISES, LLC AND LINK BIOSCIENCES, LLC, Appellants**
**V.**
**CLAIRE ANGLES, MICHEAL KEARL, MICHAEL SMITH, THE VIRTUAL FORMULA, LLC, Appellees**

**On Appeal from the 380th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 380-01127-2021**

## MEMORANDUM OPINION

Before Justices Molberg, Pedersen, III, and Smith
Opinion by Justice Molberg

Appellants LaCore Enterprises, LLC (LaCore) and Link BioSciences, LLC (Link) appeal the denial by operation of law of their motion to dismiss appellees' counterclaims pursuant to the Texas Citizens Participation Act.[1] In one issue, appellants argue the trial court erred by failing to dismiss appellees' counterclaims.

---

[1] Because the counterclaims at issue here were filed on May 11, 2021, the 2019 TCPA amendments, which became effective September 1, 2019, apply in this case. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, 2019 Tex. Sess. Law Serv. 684 (codified at TEX. CIV. PRAC. & REM. CODE §§ 27.001, .003, .005–.007, .0075, .009–.010).

Because we conclude some of appellees' counterclaims are based on or in response to appellants' exercise of the right to petition, we reverse in part the denial of appellants' motion to dismiss and remand to the trial court. We otherwise affirm.

## I. Background

Appellants LaCore and Link filed their first amended petition and application for a temporary restraining order and for temporary and permanent injunctive relief on March 16, 2021. In their petition, appellants alleged appellee Michael Smith became the CEO of appellant Link, an affiliate of appellant LaCore, and Smith stayed for three years. Upon his departure from Link, Smith signed a separation agreement that prohibited him from using or disclosing Link's confidential information, trade secrets, and other proprietary information without Link's written permission. Smith also was barred, for four months, from being employed by, consulting with, or having any interest in, any ownership interest in, or any activity involving customized nutrition or specialty blending of nutritional products. The agreement also prohibited Smith from soliciting or entertaining inquiries from Link's vendors or suppliers for twenty-four months.

Appellants alleged Smith began competing against Link shortly after his departure. Two weeks after executing the Smith release agreement, he reinstated the corporate status of appellee Virtual Formula, LLC (Virtual). Smith was the co-founder and president of Virtual, and his wife served as CEO. Virtual held itself out as a firm in "the field of individualized nutritional supplements and skin care."

–2–

Appellants alleged that, by February 2021, Virtual had in place over a dozen items of intellectual property and an executive team, an agreement with a lab processor and data analytics company, an agreement with a manufacturer, five DNA reports, software development, a capacity to process DNA, initial individualized formulas, pre-sales "across multiple channels," and "strategic sales and supplier partnership conversations."

Appellants alleged appellee Michael Kearl was the former chief technology officer for appellant LaCore, where he learned the "science and technology behind individualized supplements." On July 14, 2020, Kearl's employment was terminated, and he executed a separation agreement, which prohibited him from directly or indirectly using or disclosing LaCore's confidential information, trade secrets, and other proprietary information without LaCore's written permission. LaCore never gave Kearl such permission. Appellee Claire Angles was an accounting clerk at LaCore, where she executed an agreement to not disclose to third parties any of LaCore's trade secrets or confidential information without LaCore's written consent. Angles was also Kearl's "live-in girlfriend." While Angles was on administrative leave, Angles was informed on February 18, 2021 she was being terminated, but would continue to receive salary and benefits for ninety days. Appellants alleged LaCore made Angles' termination effective on March 9 after discovering an incident of intellectual property theft described below. Appellants alleged LaCore served demand letters on Virtual, Smith, and Kearl on March 4,

2021, "in connection with their (mis)use of LaCore, Link, and their affiliates' confidential information for the purposes of competing with LaCore, Link, and their affiliates."

The next day, LaCore discovered Angles, who was still receiving salary, had reset her LastPass password and "had begun copying and/or transferring LaCore's trade secrets and/or confidential information from LaCore's data servers and online data storage to Angles' personal Gmail account." Angles used the LastPass account to gain "the passwords necessary to freely access LaCore's confidential and trade secret information including but not limited to financials, bank accounts, customer and vendor information, and personal bank account information and emails for the vast network of independent distributors that are paid by LaCore owned or supported MLM companies." Angles did this, appellants alleged, to disclose the confidential information to Kearl and Virtual, to give them "an economic advantage to compete with LaCore and its affiliates," and "to interfere with LaCore's customers and/or vendors in an attempt to solicit those customers and/or vendors away from conducting business with LaCore and its affiliates."

Appellants alleged Angles then refused to meet with LaCore management to discuss the transfer of intellectual property to Angles' personal Gmail account. LaCore sought and obtained a temporary restraining order enjoining Angles from "further harming LaCore" and ordering her to return the stolen information.

LaCore sued Smith, Kearl, and Angles for breach of contract for violating their separation agreements and for breach of fiduciary duty. It sued Virtual, Smith, Kearl, and Angles for violations of the Texas Uniform Trade Secrets Act. LaCore also applied for a temporary restraining order, and temporary and permanent injunctive relief, to restrain appellees from disclosing or using LaCore's confidential information; accessing, transferring, downloading, or using LaCore's confidential information; deleting, removing, or modifying any data on LaCore's computers, databases, or servers; or taking any action that would impair the value of LaCore's assets, intellectual property, or confidential information.

On May 11, 2021, appellees generally denied appellants' claims, asserted several affirmative defenses, and alleged counterclaims against appellants. In direct contrast to appellants, they claimed Kearl and Smith never disclosed any confidential or proprietary information of LaCore or Link. Appellees alleged that Viome—a possible investor in Smith's startup—reached out to Smith, and that Smith was unaware Viome was also a LaCore customer. When Smith learned Viome had a connection to LaCore, he told Viome he could not do business with an employee, vendor, or supplier of Link. Viome indicated it was not an employee, vendor, or supplier of Link, and Viome "continued communicating with Smith with the desire that they form a partnership and eventually build a facility and process." Smith told Viome that Virtual was fundraising, and Viome requested a confidential information memorandum ("IM")—the formal fundraising document Virtual generated for

–5–

potential investors—which Smith sent to the CEO of Viome. Smith attended a business meeting at Viome "to discuss the company's future," where he ran into LaCore's owner, Terry LaCore.

Afterwards, appellees alleged Terry texted Smith: "In light of the meeting legal is wanted [sic] to gear up to start sending you letters and filing in the courts for breach of your separation agreements. Would be nice if you and I could try to figure this out before all that time, money, and headaches happen for both of us." The two spoke on the phone, and Terry told Smith he had invested over one million dollars in Viome inventory and had almost $750,000 in inventory remaining, and that he went to the meeting to possibly invest in Viome. Smith told Terry that he was unaware of that and that he would have "refused to negotiate with Viome" had he been aware. Smith told Terry he did not want to compete with LaCore and that he had an IM if he wanted a copy for purposes of settlement or compromise negotiations and to demonstrate that Smith's vision did not compete with LaCore. Terry requested Smith provide him with the IM to see if they could "resolve their dispute" "prior to any litigation being filed." The IM was sent to Terry on February 23, 2021.

According to appellees, the IM stated, among other things, it was "prepared on a confidential basis solely for the benefit of selected, qualified investors, and is not to be copied, distributed, or disclosed to third-parties without the prior written consent of [Virtual]." It stated that "[b]y accepting this information memorandum,

the recipient acknowledges that this document is proprietary and confidential[.]" Further, recipients agreed to the following:

> Hold and treat this Information Memorandum in the strictest confidence, and will not directly or indirectly disclose or permit anyone else to disclose this Information Memorandum to any other person, firm or entity, provided that recipient may disclose to its directors, executive officers, employees, counsel or accountants such information as is necessary for the proper evaluation of this Information Memorandum if such persons are informed by recipient of the confidential nature of this Information Memorandum and agree to be bound by the terms contained herein.

Smith and Terry discussed several other topics, including why Smith was fired by Link, why Link refused to reimburse Smith for expenses Smith incurred during employment, and Viome. The call was "cordial and non-threatening." Smith and Terry "continued to communicate on friendly terms" until March 2021. On March 10, 2021, a Viome representative e-mailed Smith, asking him to demonstrate that his contract allowed them to do business together. Smith asked Viome to not contact him or Virtual again. According to Smith, "Viome and [Virtual] never entered into any contractual relationship, either written or verbal, and the parties have had no discussion since."

Appellees alleged in their counterclaims that appellants violated the confidentiality agreement "contained in the IM by disclosing the contents of the IM to the general public by filing the petition," which allegedly contained "the contents of the IM." They alleged five paragraphs of the amended petition "are near word-for-word copies" or quotations of statements in the IM. Appellees alleged appellants

–7–

did not receive prior written consent to copy, distribute, or disclose the IM's contents.

Appellees further alleged Angles, in January 2021, began having problems with her work laptop. The laptop's display cracked, making it impossible to use. The director of IT helped Angles upload particular items from the laptop to a cloud drive so she could work from another computer. Angles "understood LaCore was aware of this upload" and approved it.

Appellees alleged that, on January 26, 2021, LaCore's general counsel, Jenifer Grace, informed Angles she needed to end her romantic relationship with appellee Kearl, the former chief technology officer of LaCore. According to Angles, Grace told her to move out of her shared home with Kearl "as it would, according to Grace, more than likely 'go into foreclosure'" because he could not afford the house on his own.

Angles was placed on temporary administrative leave from LaCore on the same day. She believed the reason for the leave was her relationship with Kearl. Angles was told on February 18, 2021, that she was being terminated and would receive salary and benefits for ninety days. She was told she was terminated because she was no longer a good fit for LaCore.

Appellees further alleged in their counterclaims that, "[s]ince before February 26, 2021, Angles has not accessed, downloaded, or copied any LaCore-related material to which Angles had access while she was employed by LaCore." Angles

believed her access to e-mail and work files was removed by February 2, 2021. On March 5, 2021, Angles accessed her LastPass account, which was connected to her LaCore e-mail address, to recover a password for her bank account to pay her mortgage. Angles did not believe any of the passwords stored in her LastPass "vault" were functional at that time. She did not "use any LaCore-related passwords or credentials to access any documents or information belonging or related to LaCore"; instead, she exported to her personal computer only the list of her personal passwords. Angles was not employed by, did not work with, and had no business dealings with Smith, Kearl, or Virtual, nor did she ever disclose any confidential or proprietary information to any third parties, including Kearl, Smith, and Virtual. Though Angles was in a romantic relationship with Kearl and owns a home with him, she was not privy to any information regarding Kearl's business dealings with Smith or Virtual. Appellees alleged Angles could not meet on March 5 because she had a sick child at home. When she informed LaCore about this circumstance, she heard nothing further. At no point did anyone at LaCore "attempt to talk to Angles about an[] alleged 'data breach' or any of the allegations made in the petition."

Appellees also alleged that appellants published defamatory statements in their petition. They alleged the petition's statement that Smith left Link to compete was false. Smith, instead, was replaced as CEO and then fired from Link. After he failed to secure any other opportunities, he decided to start his own company. Appellees allege the petition's statement that Smith reinstated Virtual to compete

with appellants was false. Instead, he did so to collect commissions from Uforia Science, an affiliate of LaCore, which he was owed "under the [Virtual] name." Grace, LaCore's general counsel, was "aware of this and understood it was for commissions and not to compete . . . ." Appellees alleged the petition's statement that Angles copied or transferred LaCore's trade secrets or confidential information from LaCore's servers to Angles' Gmail account was false. They also alleged the petition's statement that Angles gained the passwords necessary to freely access LaCore's confidential and trade secret information by improperly accessing the LastPass account was false, and the petition's statement that Angles accessed LaCore's accounts to disclose confidential information to third parties to give them an advantage was false. Appellees alleged Virtual had not received any money in revenue from selling DNA custom supplements except for the above-mentioned commission received from Uforia. Appellees alleged the petition's statement that Angles copied or transferred LaCore's confidential information to interfere with LaCore's customers or vendors to solicit them away from LaCore and its affiliates was false; Angles never contacted any of LaCore's or its affiliates' customers or vendors. Appellees alleged the petition's statement that Angles refused to meet after LaCore learned of the data breach was false because LaCore did not request a meeting to discuss any alleged data breach. Appellees alleged the petition's statement that Smith, Kearl, and Virtual used and disclosed appellants' confidential information for appellees' personal and business enrichment was false; appellees

–10–

had not received, disclosed, or used any such confidential information from Angles or anyone else.

Based on the above, appellees brought counterclaims for business disparagement, defamation, retaliation, unlawful termination, abuse of process, anti-trust violations, breach of contract, fraud, TUTSA violations, unfair competition, tortious interference with contract, tortious interference with business relations, and several declaratory judgments. Appellees also sought a temporary and permanent injunction.

In appellees' business disparagement claim, they asserted "[appellants], by their petition, have published false and disparaging information about Smith, Kearl, and [Virtual]." Regarding defamation, they asserted appellants "have published false statements of facts to third parties with the requisite level of fault." Third, in their retaliation claim, appellees asserted, "Angles engaged in a protected activity while still employed at LaCore," which took adverse action against Angles based on that protected activity. In appellees' unlawful termination claim, appellees asserted LaCore unlawfully terminated Angles from her employment with LaCore based on her sex and in retaliation for protected activities. Appellees alleged in their abuse of process action that appellants "made an illegal, improper, or perverted use of the process which was a use neither warranted nor authorized by the process." For their anti-trust violations claim, appellees asserted appellants violated section 15.05(a) of the business and commerce code because they "engaged in a combination or

–11–

conspiracy in restraint of trade or commerce which is unlawful." Further, appellees alleged appellants violated section "15.05(b) because they have monopolized, attempted to monopolize, or conspired to monopolize any part of trade or commerce." In their breach of contract claim, appellees asserted Virtual and LaCore "entered into a valid agreement both pertaining to and consisting of the Confidential Information Memorandum," and LaCore breached that agreement by "disclosing the contents of the confidential agreement." Appellees asserted in their fraud claim that LaCore knowingly or recklessly made a material representation to Smith and Virtual that was false to induce them to act upon the representation, Smith and Virtual relied on the representation and were injured as a result. In their TUTSA violations claim, appellees asserted the IM was a trade secret of Virtual that appellants obtained through "improper means and improperly disclosed to third-parties." In their unfair competition claim, appellees asserted appellants "unfairly appropriated and used Smith and [Virtual's] confidential information memorandum," which was "a unique pecuniary interest created by [appellees] through the expenditure of labor, time, skill, and money." In their first tortious interference with contract claim, appellees asserted Virtual had contracts with third parties that were willfully and intentionally interfered with by appellants. In their tortious interference with business relations claim, Virtual asserted it had "prospective contractual or business relations with third parties," and appellants engaged in conduct that was either "independently tortious or unlawful which interfered with VF's prospective contractual and business

–12–

relations." In Kearl's declaratory judgment action against LaCore, Kearl sought a declaration that (a) his separation agreement with LaCore does not prevent him from working for a competitor of LaCore, (b) his separation agreement with LaCore does not prevent him from working in the DNA-based custom nutrition supplement industry, and (c) he is permitted to work for a DNA-based custom nutrition supplement company as long as he is not disclosing or using LaCore confidential information. In Smith's declaratory judgment action against Link, Smith sought a declaration that (a) his separation agreement with Link does not prevent him from working for a competitor of Link after a date certain, (b) his separation agreement with Link does not prevent him from working in the DNA-based custom nutrition supplement industry, and (c) he is permitted to work for a DNA-based custom nutrition supplement company as long as he is not disclosing or using Link's confidential information. Finally, Virtual sought a declaration that particular items do not constitute trade secrets owned or licensed by Link or LaCore and therefore such items cannot be the basis for a trade secret misappropriation claim against Virtual.

On June 14, 2021, appellants filed a TCPA motion to dismiss appellees' counterclaims. They sought dismissal of appellees' counterclaims, arguing they were based on or in response to appellants' "protected communications and actions" in the lawsuit. They sought the dismissal of appellees' counterclaims for defamation, business disparagement, breach of contract, abuse of process, TUTSA

violations, unfair competition, anti-trust violations, and tortious interference with existing and potential business, as well as their counterclaims for declaratory relief, and appellee Angles' counterclaims for retaliation and unlawful termination. Appellants did not seek dismissal of the fraud counterclaim. Appellants' motion was denied by operation of law. *See* TEX. CIV. PRAC. & REM. CODE § 27.008(a).

## II. Discussion

"The [TCPA] protects citizens who petition or speak on matters of public concern from retaliatory lawsuits that seek to intimidate or silence them." *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015) (citing TEX. CIV. PRAC. & REM. CODE § 27.001–.011) (footnote omitted). Its purpose "is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE § 27.002.

Under the TCPA, a party may file a motion to dismiss a legal action "based on" or "in response to a party's exercise of the right to free speech, right to petition, or right of association[.]" *Id.* § 27.003(a). A three-step decisional process follows. First, the trial court must dismiss the legal action "if the moving party demonstrates that the legal action is based on or is in response to: (1) the party's exercise of: (A) the right of free speech; (B) the right to petition; or (C) the right of association; or (2) the act of a party described by Section 27.010(b)." *Id.* § 27.005(c).

Second, the court "may not dismiss a legal action under this section if the party bringing the legal action establishes by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id*. § 27.005(c). This prima facie standard requires the nonmovant to bring forth "only the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004) (internal quotation marks omitted). Prima facie evidence is evidence that will suffice as proof of a fact in issue; "[i]n other words, a prima facie case is one that will entitle a party to recover if no evidence to the contrary is offered by the opposite party." *Serafine v. Blunt*, 466 S.W.3d 352, 358 (Tex. App.—Austin 2015, no pet.).

Finally, the court must dismiss the legal action if the movant "establishes an affirmative defense or other grounds on which the moving party is entitled to judgment as a matter of law." TEX. CIV. PRAC. & REM. CODE § 27.005(d).

"Legal action" under the TCPA "means a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal, declaratory, or equitable relief." *Id*. § 27.001(6). "Exercise of the right to petition" means, among other things, a communication in or pertaining to a judicial proceeding. *Id*. § 27.001(4). "'Communication' includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id*. § 27.001(1). Judicial proceeding means an actual, pending judicial proceeding. *Levatino v. Apple Tree Cafe Touring, Inc.*, 486

–15–

S.W.3d 724, 728 (Tex. App.—Dallas 2016, pet. denied). A communication "pertaining to" a judicial proceeding does not include anticipated or potential future judicial proceedings. *Id*. "To trigger the TCPA's protection, the 'legal action' must be factually predicated on the alleged conduct that falls within the scope of the TCPA's definition of the exercise of the right to petition." *Sorkin v. P.T. Atlas Mfg., L.L.C.*, No. 05-21-00657-CV, 2022 WL 780444, at *3 (Tex. App.—Dallas Mar. 15, 2022, pet. denied) (mem. op.). Exercise of the right of free speech means "a communication made in connection with a matter of public concern." TEX. CIV. PRAC. & REM. CODE § 27.001(3). Matters of public concern include statements or activities regarding "a matter of political, social, or other interest to the community[,]" or "a subject of concern to the public." *Id*. § 27.001(7). But "[a] private communication made in connection with a business dispute is not a matter of public concern under the TCPA." *Erdner v. Highland Park Emergency Ctr., LLC*, 580 S.W.3d 269, 276 (Tex. App.—Dallas 2019, pet. denied).

When the text of the TCPA dictates the outcome of a case, we review the trial court's ruling de novo. *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 132 (Tex. 2019). In our review, we consider "the pleadings, evidence a court could consider under Rule 166a, Texas Rules of Civil Procedure, and supporting and opposing affidavits stating the facts on which the liability or defense is based." TEX. CIV. PRAC. & REM. CODE § 27.006(a); *Dyer v. Medoc Health Services, LLC*, 573 S.W.3d 418, 424 (Tex. App.—Dallas 2019, pet. denied).

In construing the TCPA, we must determine and give effect to the Legislature's intent. *See City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003). The best guide to what lawmakers intended is the enacted language of a statute, "which necessarily includes any enacted statements of policy or purpose." *Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018). Moreover, we determine legislative intent from considering an act as a whole rather than its parts in isolation. *City of San Antonio*, 111 S.W.3d at 25. We construe the statute's words "according to their plain and common meaning, unless a contrary intention is apparent from the context, or unless such a construction leads to absurd results." *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008) (citations omitted). We "may not judicially amend a statute by adding words that are not contained in the language of the statute." *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 508 (Tex. 2015).

### *Exemptions waived*

Appellees argue the "commercial speech" exemption under section 27.010(a)(2) applies to its counterclaims, and alternatively, they argue the "employee-employer" exemption under section 27.010(a)(5) applies. Appellants respond, in the first place, that appellees failed to raise these arguments in the trial court and thus failed to preserve them for appeal. We agree with appellants.

The non-movant bears the burden of proving a statutory exemption applies to its legal action. *Kirkstall Rd. Enterprises, Inc. v. Jones*, 523 S.W.3d 251, 253 (Tex. App.—Dallas 2017, no pet.). To preserve a complaint for appellate review, the

record must show that a party made the complaint to the trial court by a timely request, objection, or motion that stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint. TEX. R. APP. P. 33.1. Accordingly, the non-movant waives a contention on appeal that one of the statutory exemptions under section 27.010 applies if the non-movant failed to raise the contention in the trial court. *See Baumgart v. Archer*, 581 S.W.3d 819, 826 n.4 (Tex. App.—Houston [1st Dist.] 2019, pet. denied); *Elite Auto Body LLC v. Autocraft Bodywerks*, Inc., 520 S.W.3d 191, 206 n.75 (Tex. App.—Austin 2017, pet. dism'd).

Appellees did not raise in the trial court their two arguments relating to the commercial speech and employee-employer exemptions. Consequently, this issue is not preserved for our review. *See* TEX. R. APP. P. 33.1.

### *Business disparagement and defamation*

**Step one.** Appellants argue that, on their face, appellees' business disparagement and defamation counterclaims are based on or in response to communications made by appellants in a judicial proceeding—specifically, statements made in their petition. As described above, appellee's business disparagement counterclaim alleged appellants, "by their petition, have published false and disparaging information about Smith, Kearl, and [Virtual]." Under their defamation counterclaim, appellees stated more generally that appellants "have published false statements of fact to third parties with the requisite level of fault."

–18–

Elsewhere in in appellees' counterclaims, however, appellants described the allegedly defamatory statements, stating, "Several of the material statements contained in the petition are false and defamatory and cannot be proven by any competent and reliable evidence." Appellees then discussed several statements in the petition, explaining why they were false. We agree with appellants that, on their face, these two counterclaims are based on appellants' petition, which is a communication made in a judicial proceeding. We conclude appellants have demonstrated these counterclaims are based on or in response to appellants' exercise of their right to petition. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(b).

**Step two.** We now consider whether appellees have established by clear and specific evidence a prima facie case for each element of their business disparagement and defamation claims. To prevail on a business disparagement claim, a plaintiff must establish that (1) the defendant published false and disparaging information about it, (2) with malice, (3) without privilege, (4) that led to special damages to the plaintiff. *Choctaw Constr. Servs. LLC v. Rail-Life R.R. Servs., LLC*, 617 S.W.3d 143, 152 (Tex. App.—Houston [1st Dist.] 2020, no pet.). To prevail on a defamation cause of action, the plaintiff must prove the defendant (1) published a false statement about the plaintiff (2) that was defamatory (3) while acting with either actual malice, if the plaintiff was a public official or public figure, or negligence, if the plaintiff was a private individual, regarding the truth of the statement. *Williams v. City of Dallas*, 53 S.W.3d 780, 789 (Tex. App.—Dallas 2001, no pet.). A plaintiff must

–19–

further prove specific damages unless the offending publication is defamatory per se. *In re Lipsky*, 460 S.W.3d 579, 596 (Tex. 2015). "Defamation per se refers to statements that are so obviously harmful that general damages, such as mental anguish and loss of reputation, are presumed." *Id*. Remarks that adversely reflect on a person's fitness to conduct his or her business or trade are also deemed defamatory per se. *Id*. Here, we do not think the statements Smith alleged can be implied—that Smith's separation agreement prevented him from working with Viome—were defamatory per se. *Id*. The implied statements were neither "obviously harmful" nor related to Smith's "fitness to conduct his business." *Id*. Accordingly, appellees were required to prove damages not just for their business disparagement claim but also their defamation claim.

Appellees point to Smith's affidavit submitted in response to appellants' TCPA motion to dismiss as evidence for these two claims. Smith stated Virtual had not received or solicited any money from selling DNA-custom supplements and he did not begin fundraising for Virtual until his non-compete obligations under his separation agreement had been fulfilled. Regardless, Smith stated Link did not sell products to the public, and that Virtual and Link therefore could not be in the "same marketing space." Smith stated he was contacted by Viome on October 19, 2020, and he notified it he was "still bound by non-compete provisions of the agreement with Link"—communications ceased. Smith contacted Viome in January 2021, looking for referrals. He learned Viome "wanted to expand and end the relationship

between Viome and LaCore." Before this time, Smith was unaware Viome had a relationship with LaCore or Link. Smith told Viome he could not do business with any entity that was an employee, vendor, or supplier of Link. Viome told Smith it was not an employee, vendor, or supplier of Link, though it confirmed it did business with LaCore. Viome wished to form a partnership with Virtual or Smith. Smith declined employment and stock options with Viome, but he informed Viome that Virtual was fundraising and provided it with Virtual's information memorandum. A few days later, Smith received a text message from Terry—LaCore's owner—stating that, after meeting with Viome, LaCore's legal team wanted to go after Smith for breaching his separation agreement but Terry wanted to "figure this out before all that." Terry and Smith then had a conversation about Viome, during which Smith learned about Terry's investments with Viome. Smith provided Terry with the information memorandum to try to show him he did not want to compete with LaCore directly. Smith explained to Terry the memorandum was confidential, and Terry agreed not to share it with anyone else. Smith received an email on March 10, 2021, from Viome asking him to prove that his contract allowed Smith and Viome to do business together. Smith alleged the email "implie[d] that he spoke to Terry and that Terry told him [Smith] was prohibited from doing business with Viome, which is false." Smith requested Viome never to contact Virtual or Smith again. Smith alleged that, as a result of Terry or LaCore "falsely stating to third parties, including Viome, that [he] could not do business in the DNA-based nutrition

–21–

supplement industry, Viome and [Virtual] never entered into any contractual relationship . . . and the parties have had no discussion since." Smith stated that Terry's communications with Viome ultimately resulted in Virtual losing a $1,250,000 contract. Smith also alleged "disparagement from LaCore's group of contacts" included comments to employees, vendors, suppliers, and other LaCore entities that Smith or Virtual used proprietary information to build Virtual, while "poaching Uforia customers"—both of which Smith stated are false.

We conclude appellees failed to establish by clear and specific evidence a prima facie case for each element of their business disparagement and defamation claims. Specifically, they failed to provide clear and specific evidence that appellants made false statements about Smith or Virtual and that appellees were damaged as a result. First, Smith's affidavit was conclusory and speculative regarding any defamatory statements made by Terry or LaCore. The best Smith offers is his suggestion that Viome's email, asking him to demonstrate he could work with Viome under his separation agreement, "implie[d] that [Viome] spoke to Terry and that Terry" told Viome that Smith could not work with them. This fails to meet the "clear and specific evidence" standard required by the TCPA.[2] Otherwise, Smith's affidavit assumed LaCore or Terry made false statements, but failed to provide clear and specific evidence that they did so. Second, appellees failed to

---

[2] "'Clear' means 'free from doubt,' 'sure,' or 'unambiguous.'" *Serafine v. Blunt*, 466 S.W.3d 352, 358 (Tex. App.—Austin 2015, no pet.).

provide clear and specific evidence they suffered damages as a result of any defamatory statements. Smith's conclusory statement that Terry's "communication with Viome ultimately resulted in [Virtual] losing a $1,250,000 contract" is contradicted elsewhere in the affidavit. Smith stated that, after Viome asked him to demonstrate he was free to work with them under his separation agreement, Smith himself cut off further communications with Viome, telling Viome never to contact him again. Thus, any loss of business seemingly resulted from Smith ending his business relationship with Viome.

We conclude appellees failed to establish by clear and specific evidence that appellants published false statements about Smith or Virtual or that Smith or Virtual suffered any damages as a result. Accordingly, we conclude the trial court erred by failing to dismiss appellees' business disparagement and defamation claims.

### *Breach of contract, TUTSA violation, and unfair competition*

**Step one**. In its breach of contract counterclaim against LaCore, appellees alleged Virtual and LaCore "entered into a valid agreement both pertaining to and consisting of the confidential information memorandum." They alleged LaCore breached the agreement "by disclosing the contents of the confidential agreement." Appellees asserted in their TUTSA violations counterclaim that the information memorandum constituted Virtual's trade secret and appellants "improperly disclosed [it] to third-parties." In their unfair competition counterclaim, appellees

alleged appellants "unfairly appropriated and used Smith and [Virtual's] confidential information memorandum."

Appellees primarily alleged disclosure of the information memorandum through appellants' petition, but they also point to evidence that appellants disclosed the memorandum to its lawyer in this case, Carlisle Braun, and to its general counsel, Jenifer Grace. Smith stated in his affidavit attached to appellees' response to the TCPA motion that Terry LaCore disclosed the contents of the memorandum to Braun and Grace, who, he stated, "were not just attorneys for LaCore, but also other third-party companies such as Uforia[.]" Smith stated that the "fact the Confidential IM was disclosed to others, including Jenifer Grace, is evidenced by the affidavits attached to Plaintiffs' own pleadings . . . ." In Grace's affidavit, attached to appellants' TCPA motion, she stated she received a copy of Virtual's information memorandum shortly after January 26, 2021.

As noted above, communications made regarding anticipated or potential future judicial proceedings are not communications pertaining to judicial proceedings under the TCPA. *See Levatino*, 486 S.W.3d at 728. Thus, LaCore's disclosure of the information memorandum to his lawyers before the suit was filed was not a communication made in or pertaining to a judicial proceeding. *See QTAT BPO Sols., Inc. v. Lee & Murphy Law Firm, G.P.*, 524 S.W.3d 770, 777–78 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) (following *Levatino* and concluding the appellant's disclosure of confidential information to its lawyers prior to initiation

–24–

of litigation relating to the confidential information was not a communication made in or pertaining to judicial proceeding).  We conclude appellants have not established the TCPA applies to these communications, and appellants' motion to dismiss was properly denied as to these communications.

However, appellants were undoubtedly exercising their right to petition by making statements and allegations in their petition.  Appellees' counterclaims for breach of contract, TUTSA violation, and unfair competition were, in part, based on appellants' petition insofar as appellees allege disclosure of the information memorandum in the petition.  Accordingly, we conclude appellants have demonstrated these counterclaims—to the extent appellees seek to recover for appellants' statements in the petition—are based on appellants' exercise of their right to petition.  *See* TEX. CIV. PRAC. & REM. CODE § 27.005(b); *Rose v. Wash*, No. 05-22-00289-CV, 2022 WL 17750750, at *3 (Tex. App.—Dallas Dec. 19, 2022, no pet. h.) (mem. op.) (concluding a legal action was only partly based on or in response to the movant's exercise of the right to petition).

**Step two.**  To prevail on a breach of contract claim, a plaintiff must establish the following elements: (1) a valid contract existed between plaintiff and defendant; (2) plaintiff tendered performance or was excused from doing so; (3) defendant breached the terms of the contract; and (4) plaintiff sustained damages as a result. *Atrium Med. Ctr., LP v. Houston Red C LLC*, 546 S.W.3d 305, 311 (Tex. App.—Houston [14th Dist.] 2017), *aff'd*, 595 S.W.3d 188 (Tex. 2020).

The elements of the tort of unfair competition by misappropriation are (1) the creation of plaintiff's product—the trade secret information—through extensive time, labor, skill, and money; (2) defendant's use of that product in competition with plaintiff, thereby gaining a special advantage in that competition because defendant is burdened with little or none of the expense incurred by plaintiff; and (3) commercial damage to plaintiff. *Baylor Scott & White v. Project Rose MSO, LLC*, 633 S.W.3d 263, 287 (Tex. App.—Tyler 2021, pet. denied).

"The elements of a claim for violation of TUTSA are (1) ownership of a trade secret; (2) misappropriation of the trade secret; and (3) an injury to the plaintiff or unjust enrichment to the defendant." *Morrison v. Profanchik*, No. 05-17-01281-CV, 2019 WL 3798182, at \*5 (Tex. App.—Dallas Aug. 13, 2019, no pet.) (mem. op.).

Each of these claims requires proof of damages suffered by the plaintiff, or in the case of the TUTSA violation claim, "an injury to the plaintiff." Appellees argue Smith's statement that the disclosure of Virtual's confidential information "reduced the value [of] such information" and that appellees have further suffered "because of the attorney's fees that have been incurred" is evidence of damages. We disagree. Smith's statement that any disclosure of the memorandum reduced the value of the information is conclusory and does not meet the clear and specific standard required by the TCPA. Furthermore, generally attorney's fees incurred in a lawsuit are not "actual damages." *See Worldwide Asset Purchasing, L.L.C. v. Rent-A-Ctr. E., Inc.*, 290 S.W.3d 554, 572 (Tex. App.—Dallas 2009, no pet.). We conclude the trial court

–26–

erred by failing to dismiss appellees' breach of contract, TUTSA violation, and unfair competition claims insofar as they were based on the petition.

*Retaliation and unlawful termination*

**Step one.** Appellants argue Angles' retaliation and unlawful termination claims against LaCore are "based on or brought in response to LaCore's communications in connection with a matter of public concern" in light of the "circumstances surrounding Angles' placement on administrative leave and Defendants' contention that her termination was part of such leave[.]" Appellants argue these communications "related to potential sex crimes . . . ."

In its retaliation claim, appellees alleged that "Angles engaged in a protected activity while still employed at LaCore," LaCore took adverse employment action based on that protected activity, and a causal connection existed between the protected activity and the adverse employment action "because LaCore used the protected activity as the basis for" terminating Angles. Appellees alleged in their unlawful termination claim that Angles was unlawfully terminated from LaCore based on her sex and in retaliation for protected activities. Reviewing the rest of appellees' counterclaims, the factual basis for these counterclaims appears to be Angles' belief that she was fired for her relationship with Kearl and for not ending the relationship.

We reject appellants' contention that these two counterclaims are based on or in response to appellants' exercise of its right to free speech on a matter of public

concern. We fail to see how Angles' allegation that she was fired for her relationship with Kearl is based on or in response to appellants' speech simply because appellants made communications regarding Kearl's conduct or character. Of course, appellants contend Angles was placed on leave and terminated for reasons other than those alleged by Angles, but we do not determine the nature of appellees' counterclaims by looking to appellants' contentions. Therefore, we conclude appellants have failed to demonstrate appellees' retaliation and unlawful termination claims are subject to the TCPA. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(b).

### *Abuse of process*

**Step one.** Appellants argue appellees' abuse of process counterclaims are "by their nature based on or brought in response to communications made in a judicial proceeding." Appellees alleged in their counterclaims that appellants "made an illegal, improper, or perverted use of the process[,] which was [ ] neither warranted nor authorized by the process." The elements of an abuse of process claim include

> (1) an illegal, improper, or perverted use of the process, neither warranted nor authorized by the process, (2) an ulterior motive or purpose in exercising such use, and (3) damages as a result of the illegal act. To constitute an abuse of process, the process must have been used to accomplish an end which is beyond the purview of the process and which compels a party to do a collateral thing which he could not be compelled to do. The critical aspect of this tort is the improper use of the process after it has been issued. Stated another way, the original issuance of process is justified, but the process itself is later used for a purpose for which it was not intended. When the process is used for the purpose for which it was intended, even though accomplished by an ulterior motive, no abuse of process has occurred.

–28–

*Preston Gate, LP v. Bukaty*, 248 S.W.3d 892, 897 (Tex. App.—Dallas 2008, no pet.). "Process" in this context refers to the range of procedures incident to litigation. *See Warner Bros. Entm't, Inc. v. Jones*, 538 S.W.3d 781, 816 (Tex. App.—Austin 2017) (finding no cases "where a valid abuse-of-process claim involved something other than the commencement of the judicial process against the defendant"), *aff'd*, 611 S.W.3d 1 (Tex. 2020). Given the nature of abuse of process claims, in light of the allegations in appellees' counterclaims, we conclude appellants have demonstrated appellees' abuse of process counterclaim is based on or in response to appellants' exercise of their right to petition. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(b).

**Step two.** As stated above, the elements of abuse of process are (1) an illegal, improper, or perverted use of the process, neither warranted nor authorized by the process, (2) an ulterior motive or purpose in exercising such use, and (3) damages as a result of the illegal act. *Bukaty*, 248 S.W.3d at 897. Appellees point to Smith's statement in his affidavit that the CEO of Uforia, Kevin Raulston, "stated that LaCore's and Uforia's goal was to make it so that neither [Virtual] nor [Smith] directly could poach Uforia's customers for at least the next year." While this evidence arguably goes to the second element—"ulterior motive"—appellees have not put forth any evidence of the first: that appellants made an "illegal, improper, or perverted use of the process." Accordingly, we conclude appellees failed to prove by clear and specific evidence a prima facie case of its abuse of process counterclaim, and the trial court erred in failing to dismiss the claim.

## *Anti-trust violations*

**Step one.**   Appellees alleged in their counterclaims in their anti-trust violations claim that appellants "engaged in a combination or conspiracy in restraint of trade or commerce which is unlawful" and "monopolized, attempted to monopolize, or conspired to monopolize any part of trade or commerce."  Appellees provide no other details in their counterclaims explaining the basis for this claim. However, the only factual allegations that could plausibly underly these claims are the allegations that LaCore used its lawsuit, including its application for injunctive relief, to stop appellees from competing.  Appellees argue this counterclaim is not based on or in response to this lawsuit, "but upon the systematic effort by appellants to prevent Smith, Kearl, and [Virtual] from engaging in" business or competing. However, they point to nothing specific beyond the lawsuit as constituting this systematic effort.  Thus, considering the factual allegations made in appellees' counterclaims, we conclude this claim, too, is based on appellants' exercise of their right to petition.  *See* TEX. CIV. PRAC. & REM. CODE § 27.005(b).

**Step two**.  To establish that a defendant contracted, combined, or conspired in restraint of trade in violation of section 15.05(a), a plaintiff must show that the alleged contract, combination, or conspiracy is unreasonable and has an adverse effect on competition in the relevant market. *Marlin v. Robertson*, 307 S.W.3d 418, 427 (Tex. App.—San Antonio 2009, no pet.); TEX. BUS. & COM. CODE § 15.05(a). Appellees were thus required to prove (1) a contract, combination, or conspiracy, (2)

which is unreasonable, and (3) has an adverse effect on competition in the relevant market. *W. Mktg., Inc. v. AEG Petroleum, LLC*, 616 S.W.3d 903, 915 (Tex. App.—Amarillo 2021, pet. denied). For anticompetitive conduct to give rise to liability under section 15.05(a) of the Texas Antitrust Act, the conduct must arise out of an agreement, rather than from independent action. *AMC Entm't Holdings, Inc. v. iPic-Gold Class Entm't, LLC*, 638 S.W.3d 198, 208–09 (Tex. 2022). Because antitrust law "does not prohibit unreasonable restraints of trade as such—but only restraints effected by a contract, combination, or conspiracy—it leaves untouched a single firm's anticompetitive conduct," short of threatened monopolization. *Id.* at 209. To prove an adverse effect on competition, the plaintiff must bring forth evidence of "'demonstrable economic effect,' not just an inference of possible effect." *Coca-Cola Co. v. Harmar Bottling Co.*, 218 S.W.3d 671, 689 (Tex. 2006). "[O]nly those restraints that actually have an adverse effect on competition in a market, as opposed to merely hurting a competitor," are condemned by anti-trust law. *Regal Entm't Group v. iPic-Gold Class Entm't, LLC*, 507 S.W.3d 337, 348 (Tex. App.—Houston [1st Dist.] 2016, no pet.).

Appellees argue Smith's statements that the CEO of Uforia, a LaCore entity, stated that LaCore wished to "tie up" appellees so they could not lure appellants' customers away over the course of the next year support their claim for unlawful restraint of trade. They also point to LaCore and Uforia's litigation against Smith and Virtual and Uforia's trademark lawsuit against Smith and Virtual. Even

assuming this is evidence of an unreasonable combination, appellees failed to produce evidence of an adverse effect in the market—an inference of possible effect is not enough. *See Harmar Bottling Co.*, 218 S.W.3d at 689. Accordingly, we conclude appellees failed to provide clear and specific evidence establishing their anti-trust claim, and the trial court therefore erred by failing to dismiss the claim.

### *Tortious interference*

**Step one**. Under Virtual's tortious interference counterclaims, appellees alleged Virtual "had contracts with third parties" and "had prospective contractual or business relations with third parties" that appellants interfered with. Here, again, appellees fail to describe in their counterclaims the factual bases for these causes of action. Appellants argue these counterclaims are based on their lawsuit and issuance of injunctive relief against appellees, "as [appellees] contend these protected actions have wrongfully interfered with [Virtual's] business." Considering the entirety of appellees' factual allegations, we agree. Appellees alleged appellants improperly disclosed Virtual's information memorandum through filing their petition, and that the petition made two defamatory statements regarding Virtual: that it was reconstituted to compete with LaCore and that Virtual used appellants' confidential information. We conclude appellees' tortious interference counterclaims are in response to appellants' exercise of their right to petition. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(b).

**Step two**. Appellees allege both that appellants tortiously interfered with an existing contract and tortiously interfered with a prospective contract. The elements of tortious interference with an existing contract are: (1) an existing contract subject to interference; (2) a willful and intentional act of interference with the contract; (3) that proximately caused the plaintiff's injury; and (4) caused actual damages or loss. *Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 367 (Tex. App.—Dallas 2009, pet. denied). To prove a cause of action for tortious interference with a prospective contract, a plaintiff must establish the following elements: (1) a reasonable probability that the parties would have entered into a business relationship; (2) an intentional, malicious intervention or an independently tortious or unlawful act performed by the defendant with a conscious desire to prevent the relationship from occurring or with knowledge that the interference was certain or substantially likely to occur as a result of its conduct; (3) a lack of privilege or justification for the defendant's actions; and (4) actual harm or damages suffered by the plaintiff as a result of the defendant's interference, i.e., the defendant's actions prevented the relationship from occurring. *Id*.

Appellees argue Smith's affidavit proves a prima facie case for these two causes of action. However, Smith stated that Virtual and Viome "never entered into any contractual relationship, either written or verbal . . . ." Thus, appellees cannot make a case for tortious interference with an existing contract. Further, appellees' tortious interference with a prospective contract claim suffers the same weakness as

–33–

their business disparagement and defamation claims—whether appellees suffered damages as a result of any tortious interference.  Smith stated in his affidavit that he himself cut off further communications with Viome after Viome asked him to demonstrate he was free to work with them under his separation agreement.  Given this, we cannot conclude appellees have provided clear and specific evidence that appellants' actions prevented a business relationship between Viome and Virtual from developing.  The trial court erred by failing to dismiss these two claims.

### *Declaratory judgment claims*

**Step one**.  As described above, Kearl sought a declaration of his rights under his separation agreement with LaCore, that his agreement did not prevent him from working in the "DNA-based custom nutrition supplement industry," and that he was permitted to work for a company in that industry provided he was not disclosing or using LaCore's confidential information.  Smith sought similar declaratory relief against Link.  He requested a declaration that his separation agreement did not prevent him from working for one of Link's competitors after a certain date, that it did not prevent him from working in the industry, and that he could work for a company in the industry provided he did not disclose or use Link's confidential information.  Finally, Virtual sought a declaration against Link and LaCore that certain items, including particular ideas, machines, and software, did not constitute trade secrets owned by Link or LaCore and "therefore, [such items] may not be the basis for a trade secret misappropriation claim against [Virtual]."

We conclude Kearl's and Smith's declaratory judgment actions are not based on or in response to appellants' lawsuit or communications in the judicial proceeding. Their sought-after declarations are not factually predicated on any such communications. Nor are these actions based on or in response to appellants' right of free speech on matters of public concern, as appellants also argue. *See Creative Oil & Gas, LLC*, 591 S.W.3d at 137 ("[N]ot every communication related somehow to one of the broad categories set out in section 27.001(7) always regards a matter of public concern. A private contract dispute affecting only the fortunes of the private parties involved is simply not a 'matter of public concern' under any tenable understanding of those words."); *see also Erdner*, 580 S.W.3d at 276. Instead, their requested declarations involve their legal rights under their respective separation agreements and their right to work in their industry. We conclude the TCPA does not apply to these actions. *See Choudhri v. Lee*, No. 01-20-00098-CV, 2020 WL 4689204, at *3 (Tex. App.—Houston [1st Dist.] Aug. 13, 2020, pet. denied) (mem. op.).

We similarly conclude appellants have failed to demonstrate that Virtual's declaratory judgment action against LaCore and Link is based on or in response to appellants' exercise of the right of free speech or the right to petition. As to the right of free speech, appellants fail to point to what communications of theirs the declaratory judgment claim was based on or in response to. Further, we do not think whether something is a trade secret owned by LaCore is a "matter of public concern"

within the meaning of the TCPA. *See Creative Oil & Gas, LLC*, 591 S.W.3d at 137. As to the right to petition, it is true that appellants brought a claim against all appellees, including Virtual, for violations of the Texas Uniform Trade Secrets Act. However, we cannot agree that Virtual's declaratory judgment action was factually predicated upon this claim simply because it sought a declaration regarding the same or similar issues raised by appellants in their TUTSA claim. *Cf. Riggs & Ray, P.C. v. State Fair of Tex.*, No. 05-17-00973-CV, 2019 WL 4200009, at *5 (Tex. App.—Dallas Sept. 5, 2019, pet. denied) (mem. op.) (concluding Riggs & Ray's lawsuit was not based on or in response to the State Fair's exercise of its right to petition even though Riggs & Ray filed a declaratory judgment action after the State Fair had non-suited a declaratory action involving the same information). Virtual's declaratory relief claim is based upon the business dispute between the parties about whether certain items are appellants' trade secrets. Accordingly, we reject appellants' contentions regarding the three declaratory judgment actions.

### Attorney's fees

Finally, appellants argue they are entitled to attorney's fees and sanctions because appellees' counterclaims are frivolous or solely intended for delay. Under section 27.009(a), except as provided by section 27.009(c), if the court dismisses a legal action under the TCPA, the court "(1) shall award to the moving party court costs and reasonable attorney's fees incurred in defending against the legal action" and "(2) may award to the moving party sanctions against the party who brought the

legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions described in this chapter." TEX. CIV. PRAC. & REM. CODE § 27.009(a). Under section 27.009(c), if the court "orders dismissal of a compulsory counterclaim under this chapter, the court may award to the moving party reasonable attorney's fees incurred in defending against the counterclaim if the court finds that the counterclaim is frivolous or solely intended for delay." *Id*. § 27.009(c).

Because appellants' motion to dismiss was denied by operation of law, the trial court did not reach the question of costs, fees, or sanctions. We remand for the trial court to, if it so decides in its discretion, award appellants reasonable attorney's fees if the trial court finds that appellees' compulsory counterclaims subject to dismissal were frivolous or solely intended for delay. *See id*. § 27.009(c).[3] Further, we remand for the trial court to award appellants court costs, and if the trial court determines them warranted in these circumstances, sanctions against appellees as the court determines sufficient to deter appellees from bringing similar actions described in chapter 27. *See id*. § 27.009(a).

### III. Conclusion

We sustain appellants' issue on appeal as to appellees' business disparagement, defamation, abuse of process, anti-trust violations, and tortious

---

[3] Appellants contended in their TCPA motion to dismiss that attorney's fees are mandatory. We reject this contention and agree with appellees that, under section 27.009(c), the trial court has discretion in awarding fees following dismissal of compulsory counterclaims. *See id*.

interference claims, and appellees' breach of contract, TUTSA, and unfair competition claims to the extent they were based upon communications made in appellants' petition. We reverse the denial of appellants' motion to dismiss as to these claims. We remand to the trial court to dismiss these claims, and to address court costs, attorney's fees, and sanctions in accordance with this opinion. We otherwise affirm the trial court's denial as a matter of law of appellants' TCPA motion to dismiss.

/Ken Molberg/
KEN MOLBERG
JUSTICE

210798F.P05



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

LACORE ENTERPRISES, LLC
AND LINK BIOSCIENCES, LLC,
Appellants

No. 05-21-00798-CV        V.

CLAIRE ANGLES, MICHEAL
KEARL, MICHAEL SMITH, THE
VIRTUAL FORMULA, LLC,
Appellees

On Appeal from the 380th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 380-01127-
2021.
Opinion delivered by Justice
Molberg. Justices Pedersen, III and
Smith participating.

In accordance with this Court's opinion of this date, the denial by operation of law of appellants' motion to dismiss is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** that portion of the denial that denied appellants' motion to dismiss as to appellees' business disparagement, defamation, abuse of process, anti-trust violations, and tortious interference claims, and appellees' breach of contract, TUTSA, and unfair competition claims to the extent they were based upon communications made in appellants' petition. We **REMAND** this cause to the trial court to dismiss these claims and for consideration of court costs, attorney's fees, and sanctions in accordance with this opinion. We otherwise **AFFIRM** the denial by operation of law of appellants' motion to dismiss.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered March 23, 2023.